# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-00151-SCT

*LARRY VINCENT HERSICK*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/30/2002 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROSS PARKER SIMONS |
| | LARRY VINCENT HERSICK PRO SE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | KEITH MILLER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/10/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     An eleven-year old girl and her eight-year-old brother  finished shopping at the Wal-Mart in Lucedale and raced to the nearby Winn-Dixie where their parents were grocery shopping.  Larry Hersick, a transient, was sitting outside the Wal-Mart on a block of concrete. As the children raced passed Hersick, he grabbed the girl by her upper right arm and pulled her a distance of about five to ten feet into the parking lot.  The girl jerked away from Hersick and ran to the Winn-Dixie with her brother.

¶2. The girl's father called the police, who rushed to the Wal-Mart to find Hersick still sitting on the block of concrete. Hersick was arrested, indicted, tried and convicted of attempted kidnaping, and sentenced to ten years' imprisonment. Hersick now appeals, claiming that his right to a speedy trial was denied, the indictment was flawed, the trial court improperly admitted a statement he made to police, and the jury verdict was against the overwhelming weight of the evidence. Finding no reversible error, we affirm.

### I. Issues raised by Hersick's counsel

*Speedy Trial -- The Constitutional Claim*.

¶3. Defendants in criminal cases are guaranteed the right to a speedy trial by the sixth and fourteenth amendments to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution of 1890. *Watts v. State*, 733 So.2d 214, 235 (Miss.1999). In *Barker v. Wingo*, 407 U.S. 514, 92 S.C.2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court has provided a test we must follow. Under *Barker*, we examine the following factors: (i) length of the delay, (ii) reason for the delay, (iii) defendant's assertion of his right, and (iv) prejudice to the defendant. 407 U.S. at 530. *See Taylor v. State*, 672 So.2d 1246, 1258 (Miss. 1996).

(i). Length of the Delay

¶4. The length of the delay is a "triggering mechanism" for the *Barker* test. Until there is some delay that is presumptively prejudicial, there is no need for further inquiry under *Barker*. 407 U.S. at 530; *Mitchell v. State*, 792 So.2d 192 (Miss. 2001). We recognize a delay of eight months to be presumptively prejudicial. *Smith v. State*, 550 So.2d 406, 408 (Miss. 1989).

¶5. The constitutional right to a speedy trial attaches at the time of the accused's arrest, indictment, or information. **Smith**, 550 So.2d at 408. "In short, the constitutional right to a speedy trial attaches when a person has been accused." **Id.**

¶6. Hersick was arrested on February 25, 2001, and his trial commenced 611 days later, on October 29, 2002. Thus, the delay is presumptively prejudicial and requires that we examine the remaining **Barker** factors.

(ii). Reason for the Delay

¶7. The second **Barker** factor requires the court to determine the reason for the delay, including the party to whom the delay is attributable. **Brengettcy v. State**, 794 So.2d 987, 993 (Miss. 1999). The burden is on the State to provide a defendant with a speedy trial. Therefore, the State bears the concomitant burden of showing that either the delay was caused by the defendant or that the delay was for a good cause. Where the State is unable to do either, this factor must be weighed against the State. **Smith v. State**, 550 So.2d at 409; **Wiley v. State,** 582 So.2d 1008, 1012 (Miss. 1991).

¶8. Delays caused by the defense, such as requests for continuances, will toll the running of the speedy trial clock for that length of time attributable to the continuance. **Wiley v. State,** 582 So.2d 1008, 1011 (Miss. 1991), citing **Flores v. State**, 574 So.2d 1314, 1318 (Miss. 1990). A time line of the relevant dates and events in Hersick's case is as follows:

- February 25, 2001:     Hersick arrested; provides false name to the police.

- April 2001:     Hersick's true identity is determined by law enforcement officers.

- November 28, 2001:     Hersick is indicted.

3

- January 30, 2002:          Hersick is arraigned.

- March 21, 2002:          Ross P. Simons is appointed to represent Hersick.

- April 15, 2002:          Hersick's request for a continuance is granted. Trial is continued to the next term.

- July 29, 2002:          The State requests a continuance because a witness is unavailable to testify. Trial is continued to October 28, 2002.

- September 20, 2002:      Hersick files a motion to dismiss for failure to grant a speedy trial filed by defense.

- October 1, 2002:        Hersick's motion to dismiss is denied.

- October 29, 2002:       Hersick's trial begins.

¶9.      We must now calculate all days attributable to Hersick's request, or other good cause, and weigh them in the context of all the *Barker* factors.

¶10.     When Hersick was arrested on February 25, 2001, he was uncooperative with police, and provided a false name to the police officers. His true identity was not established until seven weeks later in April 2001. Thus, the seven weeks (49 days) during which Hersick withheld his true identity from authorities must be subtracted from the delay.

¶11.     Hersick was indicted by the October 2001 grand jury, which was the first available grand jury after Hersick's true identity was determined. The indictment was handed down on November 28, 2001. Where a defendant is indicted by the first available grand jury in the county, the time between arrest and indictment is not counted against either the state or the defense. *Brengettcy*, 794 So.2d at 993.

¶12.    The time between Hersick's indictment on November 28, 2001 and his trial on October 29, 2002, is 335 days. However, the continuance granted to Hersick on April 15, 2002, accounts for 105 days of this period, reducing the total period of delay to 230 days.[1]

¶13.    The State further argues that the time between Hersick's arraignment on January 30, 2002, and the continuance granted on April 15, 2002, should be tolled against Hersick because of his action in seeking new representation. At arraignment, Hersick was represented by Mr. Barnett from the Public Defender's office. However, Barnett explained to Hersick and the court that he had a potential conflict of interest because he had previously represented the victim's family in other matters. Hersick and Barnett agreed that Barnett would stand in for Hersick for the limited purpose of the arraignment, and afterward another attorney could be appointed to represent Hersick. The record is devoid of any other documentation concerning Hersick's representation until an order appointing Ross Parker Simons was entered on March 21, 2002. Although the State alleges Hersick caused the delay by switching attorneys, there is nothing in the record to indicate that he is at fault for this delay.[2] Hersick certainly can not be faulted for Barnett's conflict of interest.

---

[1] A continuance granted to the defense tolls the running of the speedy trial clock. *See Wiley v. State,* 582 So.2d 1008, 1011 (Miss. 1991).

[2] Simons stated during the hearing on the motion to dismiss:
So there has been some attorney switching in this case, and I guess the issue in this case is whether or not Mr. Hersick caused any of that. And I don't find anything in the record where Mr. Hersick asked the Court formally to replace attorneys in this case. There may have been some discussions or disagreements, or he might not have like his attorneys at some times, but I don't think that he actually formally made a motion to remove his attorney. I don't know that any attorneys made motions on their own that asserted conflicts or personal conflicts or legal conflicts to the Court.

¶14.    Finally, a continuance was granted to the State on July 20, 2002, which accounts for the 92 days before Hersick's trial.  Because this continuance was granted for good cause,[3] it tolls the running of the constitutional speedy trial clock, and reduces the total period of delay to 138 days.

¶15.    The total period of delay remains at 138 days, or approximately four and a half months, a delay which is not presumptively prejudicial.  Therefore, this factor weighs in favor of the State.

    (iii). Assertion of the Right

¶16.    Under **Barker**, the defendant's assertion of his speedy trial right is entitled to strong evidentiary weight.  Failure to assert the right will make it difficult for a defendant to prove denial of a speedy trial.  **Barker v. Wingo,** 407 U.S. at 531-32.  Hersick filed a motion to dismiss for failure to grant a speedy trial on September 20, 2002, a year and a half after he was first incarcerated and five weeks before his trial was set to begin.  The events related to Hersick's request for a speedy trial are as follows.

| | |
|---|---|
| July 29, 2002: | The State requested a continuance because arresting officer Darryl Brewer was unavailable to testify.  At that time, defense counsel for Hersick objected and demanded that the state follow statutory procedure. |
| September 20, 2002: | Hersick filed his Motion to Dismiss for Failure to Grant a Speedy Trial under Miss. Code Ann. 99-17-1, Article 3, |

---

[3]This continuance was granted to the State because Darryl Brewer, the arresting officer and one of the State's key witnesses, was overseas on active military duty. *See* **Box v. State**, 610 So.2d 1148, 1150 (Miss. 1992) (continuance was granted - State's witness was unavailable because was on a mission for the United States Department of State).

|  |  |
|---|---|
|  | Section 26 of the Mississippi Constitution and the Sixth Amendment to the U.S. Constitution. |
| October 1, 2002 | Hersick's motion for speedy trial was denied. |
| October 18, 2002: | Hersick makes another demand for speedy trial. |
| October 29, 2002: | Hersick's trial begins. |

¶17.    The record reflects that Hersick asserted his right to a speedy trial on several occasions, but his first request was only a few weeks before the trial.    Therefore, this factor does not favor the State or the defendant.

(iv). Prejudice to the Defendant

¶18.    The *Barker* Court identified three interests protected by the right to a speedy trial that are to be considered when determining whether a defendant has been prejudiced by a delay in bringing him or her to trial.    They are (1) the interest in preventing oppressive pretrial incarceration, (2) the interest in minimizing anxiety and concern of the accused, and (3) the interest in limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. Of these three interests, the last is the most important; and when violated, the most prejudicial to the defendant. *See id.*

¶19.    The first of these interests, preventing oppressive pretrial incarceration, is best considered closely with the first two *Barker* factors, the length of and reasons for the delay. There are numerous cases which demonstrate that Hersick's period of pretrial incarceration was not oppressive and did not violate his constitutional rights. *Jefferson v. State*, 818 So. 2d 1099 (Miss. 2002) (480 days); *Skaggs v. State*, 676 So. 2d 897 (Miss. 1996) (554 days); *Strogner v. State*, 627 So. 2d 815 (Miss. 1993) (25 months); *Ross v. State*, 605 So. 2d 17

(Miss. 1992) (378 days); *Watson v. State*, 848 So. 2d 203 (Miss. Ct. App. 2003) (817 days); *Malone v. State*, 829 So. 2d 1253 (Miss. Ct. App. 2002) (915 days); *Thompson v. State*, 773 So. 2d 955 (Miss. Ct. App. 2000) (1031 days); *Bingham v. State*, 775 So. 2d 426 (Miss. Ct. App. 1999) (640 days).

¶20. Hersick had 611 days of pretrial incarceration. However, all but 138 days were attributed to Hersick or good cause. Therefore, Hersick has failed to demonstrate how his pretrial incarceration has been oppressive.

¶21. An analysis of the second interest, minimizing anxiety and concern of the accused, is related to the considerations discussed under the third *Barker* factor, the defendant's assertion of the right. Although he waited until a few weeks before trial to assert his right to a speedy trial, Hersick did demonstrate some frustration about the delay. During the hearing on the motion to dismiss, his counsel stated:

> Mr. Hersick's greatest concern in this case, I think at this point, is that he's been in jail for approximately 620 days – maybe 610 days. And I believe that I might have miscalculated the date of this crime by about 20 days or 10 days or so, but still, it's been well over 600 days, which is going into -- by the time he'll be tried in this case on October 28th, if the case goes forward, he's going to be about 100 days short of two years in jail.

¶22. This statement by counsel is the only indication in the record of anxiety or frustration caused by pretrial incarceration.

¶23. The State asserts that, because he was homeless, Hersick was not in a position to complain about unlawful incarceration. Specifically, the State claims:

> It seems the Appellant was incarcerated during this period, and no doubt living a much more satisfactory life in jail than the nomadic, hand-to-mouth existence he had apparently been living when arrested. Bail had apparently been set, once his actual identity had been determined, but naturally he was unable to make it.

8

> Still, one must recognize that the provision of three square meals a day, a bed, heat in winter, [sic] long warm showers, were certainly material improvements in the Appellant's life, and all at the expense of the good citizens of George County. For the Appellant to speak of prejudice under these circumstances would be impertinent and ingracious [sic], but we get ahead of ourselves.

¶24. This Court rejects these comments as inconsistent with the rights secured to all citizens under the Constitution. They also ignore the realities of prison life. Constitutional protections do not depend upon the economic status of the individual asserting them. The State discredits itself by making such assertions, and they carry no weight with this Court.

¶25. The third and most important interest is limiting the possibility that the defense will be impaired. While the length of time between arrest and trial is substantial, Hersick has not shown how his case was prejudiced by the delay. He does not provide us with any explanation or analysis of how the delay adversely affected his trial, and the record does not indicate that the delay caused any of Hersick's witnesses to be unavailable, or unable to remember information helpful to his defense.[4] Incarceration alone is not sufficient to establish prejudice under *Barker*, and without some showing of actual prejudice to his case resulting from the delay, Hersick fails to prove that the delay was so prejudicial as to warrant reversal.

¶26. Because of Hersick's failure to demonstrate that he was "oppressed", that he suffered anxiety and concern (other than concern regarding sitting in jail), or that his defense was impaired by the delay, this factor favors the State.

---

[4]At trial, Hersick's attorney put on no witnesses or other evidence. While the fact that no evidence was presented in the defense's case in chief may itself have been prejudicial to the defense, there is no evidence that the *delay* resulted in the lack of evidence or that the delay caused any prejudice resulting therefrom.

9

¶27.     Under the totality of the circumstances, and upon examination and analysis of the

*Barker* factors, we find Hersick's constitutional right to a speedy trial was not violated.

*Speedy Trial -- The Statutory Claim*

¶28.     Miss. Code Ann. § 99-17-1 (Rev. 2000), known as the "270 day rule," provides:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been *arraigned*.

(emphasis added).

¶29.     This Court has held "that compliance with section 99-17-1 does not necessarily mean

that a defendant's constitutional right to a speedy trial has been respected." *Smith*, 550 So. 2d

at 408.

¶30.     Hersick was arraigned on January 30, 2002. His trial commenced on October 29, 2002.

However, the total period of delay is 138 days, after tolling 49 days for the false identity

period, tolling the period of time between finding out Hersick's true identity and being indicted

by the next grand jury, 105 days for the continuance requested by defense counsel, and 92 days

for continuance requested by the state because of the absence of Darryl Brewer, the arresting

officer. Hersick objected to the State's request for this continuance, but the trial court granted

the Motion, finding Brewer to be a material witness, and that good cause[5] existed for the

continuance.

¶31.     On October 1, 2002, following the hearing on the Motion to Dismiss, the trial court

found that Hersick's right to a speedy trial had not been violated. A trial judge's finding will

---

[5] Brewer was in Afghanistan serving in the U.S. Army.

10

not be reversed unless manifestly wrong. ***Mitchell v. State***, 792 So.2d 192, 213 (Miss. 2001),

***Humphrey v. State***, 759 So.2d 368, 375 (Miss. 2000). We are unable to say that the trial

court's ruling was manifestly wrong. Accordingly, this issue is without merit.

*Did the trial court err in denying Hersick's demurrer?*

¶32. Hersick contends that the indictment was flawed because it failed to specify which form

of attempted kidnaping was being charged. Hersick cites ***Conley v. State***, 790 So. 2d 773, 796

(Miss. 2001) which discussed the statute:

> A plain reading of the statute leads to the sound conclusion that one may commit
> the crime of kidnaping either by secretly confining a victim or by confirming or
> imprisoning another against his or her will regardless of whether the
> confinement is secret.

¶33. Miss. Code Ann. § 97-3-53 (Rev. 2000), provides for three instances of kidnaping: (1)

"Any person who shall without lawful authority forcibly seize and confine any other person,"

(2) "inveigle or kidnap any other person with intent to cause such person to be secretly

confined or imprisoned against his or her will," and/or (3) "forcibly seize, inveigle or kidnap

any child under the age of ten (10) years and secretly confine such child against the will of the

parents or guardians or person having lawful custody of such child."

¶34. Hersick contends that, although the indictment accused him of attempted kidnaping, it

failed to specify which kind of kidnaping he was attempting. Therefore, Hersick argues, the

indictment failed to place him on notice of what crime against which he was to defend.

Furthermore, he alleges that the indictment failed to allege that he intended to confine the

victim, as required by statute.

¶35. The indictment specifically stated:

11

Larry Vincent Hersick in George County, Mississippi, on or about February 25, 2001, did wilfully, unlawfully and feloniously design and endeavor to commit the offense of attempted kidnaping, a felony denounced by Sections 97-1-7 and 97-3-53, Miss. Code of 1972 (as amended), in that he did intend to kidnap the victim; and did an overt act toward the commission thereof, to-wit: by grabbing the victim by the arm and pulling her approximately ten (10) feet from a sidewalk into the Wal-Mart parking lot; but he failed therein in that was able to jerk herself from the grasp and run to her mother, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

¶36.   The indictment gave details of the alleged attempted kidnaping, including details of how the attempt failed.  The trial court stated:

I think the indictment is proper because it goes beyond just simply saying there was an intent to kidnap the victim.  It describes those acts in clear and concise language as required by the rules, wherein it states that a victim was grabbed by the arm and pulled approximately 10 feet from the sidewalk into the parking lot, but that the kidnaping failed because she was able to jerk herself loose and run away.  So I think that that satisfies the requirement that the essential elements of the crime be stayed, and clearly the State is proceeding under the forcibly seizing and confine portion of the statute, and I think that's evident readily apparent from the reading of the indictment, so I will deny the demurrer.

¶37.   We find the indictment is not fatally flawed because it charged Hersick under two statutes.   Nor is it fatally flawed because it failed to state which kind of kidnaping Hersick intended to commit.   Hersick was on sufficient notice of the charge against him.   Rule 7.06 of the Uniform Circuit and County Court Rules states that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them." The indictment against Hersick states the essential facts, and fully

12

notified him of the nature and cause of the accusation. We therefore find that this issue is without merit.

*Did the trial court err in denying Hersick's Motion in Limine?*

¶38.    Hersick contends that the trial court's denial of his motion in limine resulted in the jury hearing his misleading and ambiguous statement to the Lucedale Police Department at the time of his booking.

¶39.    The record reflects that, during the booking process, Hersick allegedly said, "I want to know what happens to little girl snatchers in this town." Hersick filed a motion in limine regarding this statement, arguing that if presented to the jury it would have a prejudicial effect beyond any probative value, thus violating M.R.E. 401, 402 and 403.

¶40.    In denying the motion in limine, the trial court stated:

> All right, I'm going to deny this part of the Motion in Limine. The Court will find that these statements were spontaneous, not in response to questioning, and therefore they were initiated by the defendant, and would not be subject to the Miranda ruling. Further, the statements would appear to be relevant insofar as they may be considered as an admission, and that the relevant probative value would outweigh any prejudicial effect. So I'll deny the motion.

¶41.    Hersick argues that his statement was ambiguous, at best, was not an admission, and was only made after he was informed he was being charged with kidnaping. Hersick further claims that the statement was not relevant; and therefore, the trial court abused its discretion and committed reversible error. The State contends that the statement meets the M.R.E. 401 standard.

> When reviewing motions in limine, "this Court applies the following standard:
> [A] motion in limine 'should be granted only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or

statements made during trial concerning the material will tend to prejudice the jury.'"

*McGilberry v. State*, 797 So. 2d 940, 942 (Miss. 2001) (quoting *Whittley v. City of Meridian*, 530 So. 2d 1341, 1344 (Miss. 1988)).

¶42. Hersick's statement was admissible as a voluntary, spontaneous statement. We cannot say the trial court abused its discretion in finding the probative value outweighed the potential prejudice. Thus, this issue is without merit.

> *Was Hersick's conviction obtained against the overwhelming weight of the evidence?*

¶43. Hersick made a motion for a directed verdict and submitted a peremptory instruction. Post-trial, Hersick moved for a new trial or a J.N.O.V. The motions were denied, and the instruction was refused.

¶44. The standard in reviewing the denial of a motion for a new trial is that, viewing all the evidence which supports the verdict as true, reversal is proper only when we find the trial court has abused its discretion in failing to grant a new trial. *Thornhill v. State*, 561 So. 2d 1025 (Miss. 1989).

¶45. Accepting as true all the evidence in this case which supports the conviction, we are unable to say that the conviction was against the overwhelming weight of evidence. This claim is therefore without merit.

> *Did the trial court impose the maximum sentence on Hersick because he chose to exercise his right to a jury trial?*

¶46. Prior to the trial, Hersick was offered a plea bargain by the State. In exchange for his guilty plea, the State offered to recommend to the trial court a sentence of ten years, with five

years suspended. Hersick exercised his right to a jury trial and, upon his conviction, the State recommended the maximum sentence of 10 years.

¶47. Hersick requested the court sentence him to the ten years, with five suspended, the sentence the State was going to recommend if he had pled guilty. Hersick contends that the trial court erred by imposing a heavier sentence than was offered to him pretrial, and that this heaver sentence was a direct result of his exercise of his constitutional right to a trial by jury.

¶48. The State responded that Hersick was not being punished for going to trial, but rather was offered an opportunity to help himself by pleading guilty and accepting responsibility.

¶49. "This Court has repeatedly held that the imposition of a sentence, if it is within the limits prescribed by statute, is a matter left to the sound discretion of the trial court, and that the appellate courts will not ordinarily disturb a sentence so imposed." *King v. State*, 857 So. 2d 702, 731 (Miss. 2003). Whether the defendant takes responsibility for his or her actions is a fair consideration for the trial court in sentencing. We find nothing in the record that demonstrates the trial court imposed the maximum sentence to punish Hersick for exercising his right to a jury trial. Thus, this claim is without merit.

**II. Issues presented pro se.**

¶50. Hersick, pro se, raises numerous issues in his supplemental brief to this Court. The State did not file a response Hersick's pro se brief.

1. *Whether the trial court erred in not allowing testimony from various witnesses.*

A. The victim's mother.

15

¶51. Hersick contends that the failure of the mother of the victim to testify violated his due process rights by denying him his Fifth Amendment right to confront a material witness at trial. Hersick contends that the children had to accuse him of attempted kidnaping to their mother before the police were called. He asserts that the State never proved the child made this accusation to her mother, because the mother never testified.

B. The Lucedale Chief of Police.

¶52. Hersick questioned Officer Brewer outside the presence of the jury, regarding who arrested him at Wal-Mart and took him to jail. Brewer testified that he and the Chief of Police Glen Veil arrested Hersick following the incident. Hersick questioned Brewer as to why Veil was not there to testify. The State objected to the line of questioning as irrelevant, claiming Hersick's attorney could have subpoenaed Veil to testify.

C. The security guard at Wal-Mart.

¶53. Hersick contends that the trial court erred by not allowing the Wal-Mart employee to testify. He states that the Wal-Mart employee was in the front entrance watching him and could have offered proof of his innocence. Hersick contends that the employee gave a statement to Police and the failure of the employee to testify violates his Fifth Amendment rights, in that the prosecution suppressed evidence favorable to the accused.

¶54. Hersick labels these issues as whether the trial court erred by not allowing these witnesses to testify. However, the record does not indicate that the witnesses were subpoenaed by the State or by the defense to testify. We find nothing to indicate that the trial court refused to allow the witnesses to testify. Therefore, this issue is without merit.

16

2. *Did the trial court err in not admitting Hersick's backpack as evidence and allowing a brown paper bag to be exhibited in place of Hersick's backpack?*

¶55. Hersick contends that it was error not to allow his 60 pound backpack into evidence at trial to be used as exculpatory evidence. He contends that it would have demonstrated that he could not have kidnaped someone with it on his back.

¶56. Hersick cites *Berger v. United States.*, 295 U.S. 78, 88, 55 S.C. 629, 79 L.Ed. 1314 (1935), for the proposition that the prosecution must disclose favorable evidence. In *Berger*, the Court held that a prosecutor

> may prosecute with earnestness and vigor-- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

295 U.S. at 88.

¶57. Here, it was demonstrated on the first day of trial that the items in the police custody were lost. Therefore, the duffle bag's contents, which had been listed on an inventory, were admitted into evidence. However, on the second day of trial, it was stated that the items that were in the duffle bag were found. By that time, the trial court ruled that they could not be admitted into evidence because the State, prior to trial, informed Hersick's counsel that there was not going to be any physical evidence at trial. This did not constitute "improper methods" to produce "a wrongful conviction".

¶58. Hersick, nevertheless, contends that his backpack was exculpatory before it was lost or destroyed by the Lucedale police and, therefore, did not aid in his defense. Hersick cites *Jackson v. State*, 766 So. 2d 795, 801 (Miss. Ct. App. 2000) and *Trollinger v. State*, 748 So.

17

2d 167, 171 (Miss. Ct. App. 1999), in support of his argument that it is the State's duty to preserve evidence that is expected to play a significant role in the defense.

¶59. In order to play a significant role, "the exculpatory nature and value of the evidence must have been (1) apparent before the evidence was destroyed and (2) of such a nature that the defendant could not obtain comparable evidence by other reasonable means." *Jackson*, 766 So. 2d at 801. "This constitutional materiality standard is not satisfied by the 'mere possibility' that the evidence will help the defense." *Id.*

¶60. Hersick contends that his 60-pound backpack was indeed exculpatory and that it was apparent before the backpack was lost, that it was exculpatory. Hersick does not address whether comparable evidence could have be procured in this case, such as a comparable 60-pound backpack, which could have been procured and used for the demonstration. Furthermore, there was no evidence that Hersick had his backpack on his back at the time of the attempted kidnaping.

¶61. Hersick contends that the trial court erred by allowing Lambert to exhibit a brown paper grocery bag instead of his 60-pound backpack. However, we find that the record does not reflect that a brown paper grocery bag was exhibited instead of his backpack (or duffle bag). Therefore, this issue is without merit.

   3.    *Did the trial court err in allowing the victim and her brother to testify?*

¶62. Hersick contends that, since under the law of Mississippi, a child under the age of thirteen cannot be charged with a felony, the children[6] should not have been allowed the

---

[6]At the time of their testimony, the victim was thirteen years old, and her brother was ten.

18

authority to enforce the law against him, without the mother's confirmation of the accusations. Hersick further contends that the trial judge should have examined the children to find out if they knew the difference between right and wrong, because they are too young and inexperienced to understand the responsibility of their actions.

¶63.    Hersick cites *Mohr v. State*, 584 So. 2d 426 (Miss. 1991), in which this Court held:

> Mississippi courts generally allow children of tender years to testify if competent. Rule 601 of the Mississippi Rules of Evidence provides that every person is competent to be a witness unless they are incompetent or otherwise restricted. It is in the sound discretion of the trial judge to determine the competency of a child witness. Before allowing the child to testify, the judge should determine 'that the child has the ability to perceive and remember events, to understand and answer questions intelligently and to comprehend and accept the importance of truthfulness.

*Id.* at 431  (citations omitted).

¶64.    In *Mohr*, this Court did state that a judge should determine whether a child "has the ability to perceive and remember events, to understand and answer questions intelligently and to comprehend and accept the importance of truthfulness." *Id.*   There is nothing in the record here to indicate that the trial judge made any such determination. However, the *Mohr* Court stated that the judge *should*, not *must*.   Therefore, pursuant to Rule 601 of the Mississippi Rules of Evidence, it is presumed that the children were competent witnesses, absent some indication that they were not.

¶65.    After studying the children's testimony, it is clear that they were competent witnesses. Their testimony was consistent, in that they did not contradict themselves or each other.   They were intelligent, had the ability to understand and answer questions, and could remember the

date in question and the events that took place. There is no indication that they were coerced or provoked into accusing Hersick. Thus, this issue is without merit.

4. *Did the trial court err in permitting a police officer to read a record of charges at Hersick's sentencing?*

¶66. Hersick contends that the trial court erred by allowing Lambert to read a record of unproven charges at his sentencing. Hersick contends that these charges were a result of his indigency. He claims he was without money to contest them.

¶67. Hersick further alleges that his counsel was ineffective for failing to object to the reading of his record. Hersick contends that prior charges not resulting in a conviction were not admissible.

¶68. Lambert testified to Hersick's criminal history as follows:

MR. MILLER: Mr. Lambert, if you would, please advise the Court of what the criminal history of this defendant is, and what you were able to find out in your investigation.

MR. LAMBERT: It took me seven weeks, Your Honor, to find out who this gentleman actually was. I've got 11 different state ID numbers for him, from 11 different states where he had been convicted.

MR. HERSICK: The United States is terrorizing me.

MR. LAMBERT: He already has three convictions in California for sexual assaults, one child molestation that was reduced to a misdemeanor in regard to him leaving that county.

THE COURT: Does he have any felony convictions?

MR. LAMBERT: He was charged with felony child molestation, and the county in California reduced it to a misdemeanor on the grounds that he left that county.

THE COURT: But he doesn't have any felony convictions anywhere that you know of?

20

MR. LAMBERT: Sir?

THE COURT: He does not have any felony convictions anywhere that you know of?

MR. LAMBERT: No, Sir.

THE COURT: But he has some misdemeanor convictions in California. Where else?

MR. LAMBERT: California, Utah. Would it be all right to look at the file?

THE COURT: Sure.

THE WITNESS: Oregon. These are the states: Oregon, California, Idaho, Nevada, Colorado, Utah, Arizona, Georgia. And like I say, one is in California. Every one of these there's no conviction of a felony. They was charged as felonies but somehow reduced as misdemeanors.

THE COURT: What were the charges? What did he actually get convicted of?

MR. LAMBERT: Sexual battery twice in California, assault and battery, assault of a law enforcement officer in California, attempted burglary and sexual assault in California, and also assaulting an officer again.

THE COURT: And all of those were reduced to misdemeanors?

MR. LAMBERT: Yes, sir.

We find no error in this discussion of Hersick's criminal history at sentencing.

5. *Was defense counsel ineffective because he did not subpoena the victim's mother?*

¶69. Hersick contends that his counsel was ineffective for failing to subpoena the mother or the father to testify at trial. He claims that the child's mother should have testified to establish that the child "ran to her mother" as alleged in the indictment. Furthermore, Hersick argues that the mother must have been a witness. Hersick cites **State v. Fristoe**, 658 P.2d 825

(Ariz. Ct. App. 1982), in support of his argument that the mother's testimony was needed to establish that the child immediately ran to the mother and accused him.

¶70.    In *Fristoe*, one mother "testified that, at the time the girls came running into the house, both expressed that the man had offered them money to kiss between their legs. [The other] mother also testified that [her daughter] had been able to tell her what the man had said at the time the incident had occurred." 658 P.2d at 827. However, *Fristoe* did not hold that the mother had to testify in order for the evidence to be sufficient to find the accused guilty. Therefore, Hersick's reliance on this case is misplaced.

¶71.    Hersick further contends that his counsel failed to investigate his version of the facts. He cites *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) in support of his argument.

¶72.    Hersick must meet a two-part test which is set forth in *Strickland* and followed by this Court in *Stringer v. State*, 454 So. 2d 468, 478 (Miss. 1984). Hersick must show that counsel's performance was so deficient that it prejudiced his defense. *Strickland*, 466 U.S. at 687. He must also show that but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court. *Id.* at 694.

¶73.    Hersick cites *State v. Tokman*, 564 So. 2d 1339 (Miss. 1990), in support of his argument that it was his counsel's duty to interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Tokman* was a capital murder in which this Court held: "It is critical that mitigating evidence be presented at capital sentencing proceedings" *Id.* at 1342. The *Tokman* Court further stated: "While it is true that

22

courts are deferential to lawyers' judgments in such matters, there are limits. It has been held that at a minimum, counsel has a duty to interview potential witnesses and to make independent investigation of the facts and circumstances of the case." ***Id.*** (citations omitted).

¶74. This Court has clearly held that "[c]omplaints concerning counsel's failure to file certain motions, call certain witnesses, ask certain questions, and make certain objections fall within the ambit of trial strategy." ***Cole v. State***, 666 So. 2d 767, 777 (Miss. 1995).

¶75. Hersick contends that his counsel did not have a strategy to look for witnesses and that the indictment proves it because he failed to subpoena the mother. Hersick proceeds, within his pro se brief, to petition this Court for post-conviction relief alleging that the testimony of the mother is new evidence of material fact, not previously presented or heard before, and that his counsel's failure to subpoena the mother violated his right to confront a witness at trial.

¶76. We find that Hersick fails to demonstrate a lack of investigation, fails to show how the testimony of the mother could have helped him, or how he was prejudiced. Therefore, we find Hersick did not meet the ***Strickland*** test, and this issue is without merit.

> 6. *Did the trial court err in allowing the jury to be removed from courtroom during Hersick's questioning of officer Darryl Brewer?*

¶77. Hersick contends that his counsel erred by not objecting to the jury being removed from the courtroom while he examined Officer Darryl Brewer. Hersick cites ***Jones v. State***, 381 So. 2d 983 (Miss. 1980), and ***Gray v. State***, 351 So. 2d 1342 (Miss. 1977), in support of his argument that he has a constitutional right to argue his case before the jury and he was deprived of his right to have the jury hear Brewer's testimony during his cross-examination.

¶78. In ***Gray***, this Court held:

During the argument at the guilt stage of his trial defendant requested permission to 'make a statement to the jury.' In effect, defendant was requesting the right to argue his own case and his request was erroneously denied. Mississippi Constitution Article 3, section 26 (1890) provides in part: In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, . . . The refusal to permit defendant to argue his case is in direct violation of the above constitutional provision and requires reversal.

*Id.* at 1345.

¶79.    Hersick's reliance is misplaced. In ***Jones***, this Court held:

The practical solution to the dilemma presented by the accused who uses his constitutional right to argue his case to the jury to give, what is for all practical purposes, testimony is to treat the unsworn testimonial statements of the accused which were not supported by the record as a partial waiver of the privilege against self-incrimination. It is not a total waiver of the privilege, since the prosecution is unable to cross-examine the accused at this late stage of the trial. But the prosecution may comment to the jury that the defendant's statements were not given under oath and that he was not subject to cross-examination about them. The constitutional privilege of the criminal defendant appearing pro se is adequately protected if the court gives him a clear and direct warning out of the presence of the jury prior to beginning his argument that such limited comment might follow if he goes outside the record and gives what amounts to unsworn testimony.

***Jones***, 381 So. 2d at 994. In the case sub judice, Hersick was not making an argument to the jury. He wanted to cross-examine Brewer himself because his attorney did not ask him the questions Hersick wanted him to ask. Hersick was represented by counsel and was not a pro se defendant.

¶80.    Upon review of the testimony of Brewer, we find no error or prejudice to Hersick. The testimony consisted of hearsay and was irrelevant. Therefore, this issue is without merit.

7.      *Did the trial court err in allowing Hersick to make a decision about a plea bargain without the presence of his attorney?*

24

¶81. Hersick contends that the trial court violated his Sixth Amendment rights when he was not represented by counsel when offered the plea bargain on March 30, 2002. He contends that he was brought into court without his attorney and was offered his freedom if he pled guilty to attempted kidnapping. However, the record fails to show any such court appearance. This issue is without merit.

8. *Did the trial court err in allowing Judge Backstrom to participate in Hersick's plea bargain?*

¶82. Hersick next contends that on March 30, 2002, without his counsel present, the trial judge asked him how he pled. Hersick contends that, because he did not have counsel present, this amounted to the judge taking part in the plea bargain. Hersick cites ***Fermo v. State*** 370 So. 2d 930, 932-33 (Miss. 1979), in support of his argument that a judge is never to participate or get involved in a plea bargain.

¶83. In *Fermo* we stated,

> While a trial judge must control the sentencing phase of a criminal trial and has the responsibility and duty of approving or disapproving a recommendation by the prosecutor, he should never become involved, or participate, in the plea bargaining process. He must remain aloof from such negotiations. The trial judge always must be circumspect and unbiased, at all times displaying neutrality and fairness in the trial, and consideration for the constitutional rights of the accused.

*Id.* at 933.

¶84. There is nothing in the record reflecting the alleged March 30, 2002, appearance in court. Even if there was an appearance, the mere question by the Judge of how Hersick was going to plead does not constitute involvement or participation in the plea bargain process. Accordingly, this issue has no merit.

## CONCLUSION

¶85.    For the reasons stated, we find that all assignments of error are without merit.

Therefore, we affirm the judgment of the George County Circuit Court.

¶86.    **CONVICTION OF ATTEMPTED KIDNAPING AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS. AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING**.