

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1276-07

**TOMMY G. LASTER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

**COCHRAN, J., filed a dissenting opinion in which PRICE, JOHNSON and HOLCOMB, JJ., joined.**

### <u>OPINION</u>

I respectfully dissent. I do not agree with the majority of the court of appeals[1] that a rational trier of fact could conclude from the evidence in this case, beyond a reasonable doubt, that appellant (1) had a specific intent to hold or secrete eight-year-old Beatrice in a place where she was unlikely to be found, much less (2) had a specific intent to perform one of the other acts–such as holding her for ransom, using her as a shield, inflicting bodily injury

---

[1] *Laster v. State*, 229 S.W.3d 788 (Tex. App.—Fort Worth 2007).

on her or abusing her sexually–that is required for aggravated kidnapping.  This is not an attempted kidnapping case.  And it is certainly not an attempted aggravated kidnapping case. This is an unlawful restraint case.[2]

## I.

A person commits unlawful restraint "if he intentionally or knowingly restrains another person."[3]  Restrain means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person."[4]  Restraint is "without consent" if "the victim is a child who is less than 14 years of age" and "the parent, guardian, or person or institution acting in loco parentis has not acquiesced in the movement or confinement."[5]

A person commits kidnapping if he "intentionally or knowingly abducts another person."[6]  Abduct means "to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force."[7]  As noted by the majority, the offense of kidnapping is

---

[2] Appellant was also convicted for injury to a child and sentenced to twenty years imprisonment for that offense.  Appellant did not appeal that conviction.

[3] TEX. PENAL CODE § 20.02(a).

[4] TEX. PENAL CODE § 20.01(1).

[5] TEX. PENAL CODE § 20.01(1)(B)(i).

[6] TEX. PENAL CODE § 20.03(a).

[7] TEX. PENAL CODE § 20.01(2).

legally completed when the defendant, at any time during the restraint, forms the intent to prevent liberation by secreting or holding another in a place unlikely to be found.

A person commits aggravated kidnapping if he abducts another person with a further or second specific intent to

(1)     hold him for ransom or reward;
(2)     use him as a shield or hostage;
(3)     facilitate the commission of a felony or the flight after the attempt or commission of a felony;
(4)     inflict bodily injury on him or violate or abuse him sexually;
(5)     terrorize him or a third person; or
(6)     interfere with the performance of any governmental or political function.[8]

A person commits the crime of attempted aggravated kidnapping only if, acting with the specific intent both to abduct another person *and* to hold her for one of the six purposes set out above, he does an act–such as grabbing a child–that amounts to more than mere preparation and that tends, but fails, to effect the commission of the aggravated kidnapping.[9]

But not every grabbing or illegal restraint of a stranger–child or adult–evinces an intent to kidnap.[10]  And certainly not every grabbing of a stranger evinces an intent to hold

---

[8] TEX. PENAL CODE § 20.04(a).

[9] TEX. PENAL CODE § 15.01(a).

[10] *See Vandiver v. State*, 261 P.2d 617, 624 (Okla. Crim. App. 1953) (overruled on other grounds) ("Would the mere fact that the defendant took Mrs. Bridges in his arms and was therefore guilty of assault, force the conclusion *ipso facto* that he was going to kidnap her, (which means to take secretly, confine her against her will) any more than that he was going to murder her there on the spot, or take her for a wild ride in his car, or just sit with her in the car? There was no evidence direct or circumstantial of what the intentions of the defendant were beyond holding Mrs. Bridges in his arms, other than his statement that he asked her to go get a bottle of beer. There are many possible ideas that may have been in his mind. But more than speculation is required. We have sought in vain for evidence to support the judgment, but there is no evidence

her for ransom, use her as a shield, facilitate the commission of some felony, inflict bodily

injury, sexually abuse her or commit one of the other enumerated acts as is required for

attempted aggravated kidnapping.[11]  Because criminal attempt is an inchoate crime, one that

has not actually occurred, the defendant's acts, words, and the attendant circumstances of the

attempt should be "strongly corroborative of the actor's criminal purpose."[12]  Inchoate crimes

---

or circumstances to support the judgment or the conclusion or guess advanced by the Attorney
General, which we have heretofore quoted.  The law will not presume an intention beyond that
realized by the act.").

[11] "The word 'attempt' means to try; it implies an effort to bring about a desired result.
Hence an attempt to commit any crime requires a specific intent to commit that particular
offense.  If other elements of an attempt are established 'intent is the crucial question.'" ROLLIN
M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 637 (3d ed. 1982) (footnotes omitted).  See
also WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 11.3(a) at 213 & n.25 (2nd ed. 2003)
("It is not enough to show that the defendant intended to do some unspecified criminal act.")
(citing *In re Smith*, 474 P.2nd 969 (Cal. 1970), with a parenthetical stating "where defendant
convicted of attempted kidnapping on evidence that he grabbed woman, brandished screwdriver,
and said they were going in her car, which he attempted to open, effective counsel might well
have argued that this did not show intent to kidnap as opposed to intent to rape or to steal").

[12] MODEL PENAL CODE § 5.01(2).  Section (2) states that "Conduct shall not be held to
constitute a substantial step . . . unless it is strongly corroborative of the actor's criminal purpose.
Without negativing the sufficiency of other conduct, the following, if strongly corroborative of
the actor's criminal purpose, shall not be held insufficient as a matter of law: (a) lying in wait,
searching for or following the contemplated victim of the crime; (b) enticing or seeking to entice
the contemplated victim of the crime to go to the place contemplated for its commission; (c)
reconnoitering the place contemplated for the commission of the crime; (d) unlawful entry of a
structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (e)
possession of materials to be employed in the commission of the crime, that are specially
designed for such unlawful use or that can serve no lawful purpose of the actor under the
circumstances; (f) possession, collection or fabrication of materials to be employed in the
commission of the crime, at or near the place contemplated for its commission, if such
possession, collection or fabrication serves no lawful purpose of the actor under the
circumstances; (g) soliciting an innocent agent to engage in conduct constituting an element of
the crime."
    LaFave notes that along with the Model Penal Code approach–courts and legislatures
have adopted 1) the "proximity approach,"  (was the act sufficiently proximate to the intended

balance the goals of law enforcement with the liberty rights of citizens by ensuring that law enforcement may intervene to prevent crime, but only after the actor has formed a specific criminal purpose and has engaged in adequate conduct in furtherance of that specific intent to demonstrate that, if left to his own devices, the attempted crime would likely occur.[13]

Some felonies cannot be committed without some restraint of the victim. This Court has stated that the "Legislature did not intend for every crime which involves a victim whose liberty has been interfered with to turn into a kidnapping. It is up to the jury to distinguish between those situations in which a substantial interference with the victim's liberty has taken place and those situations in which a slight interference has taken place."[14]  Courts in

---

crime? i.e., a last proximate act, an indispensable act, or a physically proximate act?); 2) the "probable desistance approach," (was the act one which in the ordinary course of events would result in the commission of the target crime except for the intervention of some extraneous factor? i.e., an act beyond which a normal citizen would stop) and 3) the "equivocality approach" or "res ipsa loquitur test" (was the act of such a nature that it is itself evidence of the criminal intent with which it is done, *i.e.*, an act that bears criminal intent on its face, an act that can have no other purpose than the commission of that specific crime).  LAFAVE, SUBSTANTIVE CRIMINAL LAW § 11.4 at 224-25.

[13] *See* ALI, MODEL PENAL CODE COMMENTARIES § 5.01 at 294 (1985) (laws covering inchoate crimes 1) provide a legal basis for intervention of law enforcement to prevent consummation of a crime; 2) subject actors generally disposed towards criminal activity to the corrective process that law provides; 3) capture actors who fail to commit the substantive offense due to a fortuity).  *See also* LAFAVE, SUBSTANTIVE CRIMINAL LAW § 11.4 at 208-10 ("the law of attempts exists because there is just as much need to stop, deter and reform a person who has unsuccessfully attempted or is attempting to commit a crime that one who has already committed such an offense."  Otherwise, "exculpation of those who fail due to a fortuity 'would involve inequality of treatment that would shock the common sense of justice.'").

[14] *Hines v. State*, 75 S.W.3d 444, 448 (Tex. Crim. App. 2002) (nothing in the kidnapping statute indicates that the Legislature intended "to bar the prosecution of a kidnapping that is part and parcel of another offense" so long as there is a restriction of a person's movements so as to interfere *substantially* with the person's liberty). *Herrin v. State*, 125 S.W.3d 436, 440-441 (Tex. Crim. App. 2002) (kidnapping, or attempted kidnapping not proven when defendant "did not

other jurisdictions have repeatedly recognized that restraint simply incident to other crimes does not support a separate conviction for kidnapping or aggravated kidnapping.[15]

## II.

In this case it is undisputed that, at 10:00 a.m., on a Sunday morning, on the sidewalk of a busy street in Fort Worth, appellant grabbed at eight-year-old Beatrice, who, with her ten-year-old brother Raymond, was on the way home after a trip to the store. Raymond had ridden his bike to the store, with Beatrice standing on the back wheel pegs; Beatrice was either riding or walking the bike on their way home.[16] Appellant grabbed her with one hand around the waist, while not himself letting go of the big, red-and-white golf umbrella he was

---

shoot to merely disable or harm Wayne so that he could then abduct him, but shot him at close range in the vital organs in an obvious effort to kill him. In light of appellant's intent to murder Wayne, appellant's moving of Wayne's body after the shooting did not amount to evidence that Wayne was in the course of a kidnapping when the murder took place.") (citing *Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992) ("proof beyond a reasonable doubt" carries considerable weight; it means proof to a high degree of certainty)).

[15] *See State v. Salamon*, 949 A.2d 1092, 1119-20 (Conn. 2008) ("[A] considerable majority of state courts have followed the lead of New York and California in concluding that the crime of kidnapping does not include conduct involving a restraint that is merely incidental to the commission of some other crime against the victim. . . . Although these cases involve varying statutory language and analyses, they share a common theme, namely, that it is unlikely that the legislature intended to expose an accused to a kidnapping conviction, and the severe sanctions accompanying such a conviction, when the restraint involved is merely incidental to the commission of a separate, underlying crime. Indeed, this majority view regarding the construction of statutes delineating the crime of kidnapping rightly has been characterized as the 'modern' approach.") (citing cases from numerous jurisdictions).

[16] Both children made statements that Beatrice was riding the bike, and that appellant almost knocked her off of it. But then they testified that Beatrice was walking the bike, and that appellant grabbed her, causing her to let go of the bike which then fell against a fence. Either way, the bike never hit the ground, and the children completed their trip home with the bike.

carrying.  She screamed, her brother pulled her back toward him and gave appellant a shove, and appellant let her go a few seconds later when a car drove by and its driver honked his horn.  Raymond grabbed the bike, and they both ran home.  Appellant walked down the street toward the store, and then he stayed in the neighborhood all day, as if nothing had occurred.[17]  Beatrice and Raymond testified that they thought appellant was trying to take Beatrice.[18]  Appellant later told the police that voices in his head "started telling me that I would be better off dead."  Then the voices told him to "grab the little girl."[19]  Appellant had a crack cocaine

---

[17] In his statement, appellant said that his sister had dropped him off at the Whataburger on East Lancaster Street.  "I have her drop me off there every Saturday and Sunday so I can walk to the store and buy cigarettes or anything else I need before I walk to my brother's house.  My brother, Samuel John Laster, lives in some apartments on Beach Street by Vicker."  Appellant's sister testified at the punishment stage that appellant stayed in his room at her home five days a week, but that "I physically take him every Saturday and Sunday for the past three or four years, I drop him off at Whataburger on Lancaster, nonstop, unless it gets snow out on the ground and he just–it's just way too cold for him, this is nonstop I do this."  "He stays until 3:00, approximately."  She said that appellant was "on and off" his medicine.  Taking that medicine is a prerequisite to appellant being allowed to live with her, but shortly before this incident, appellant quit taking it.

[18] Raymond testified that appellant grabbed Beatrice, then, when the car honked, "he just immediately let go."  Raymond was upset and crying because "he could have kidnapped her."  Beatrice testified that appellant grabbed her and hurt her, that this was "offensive" to her and scared her, and that she thought he was going to take her.  Both children testified that he did not take her anywhere or say anything.

[19] The jury was told during opening statements that appellant "has a 40-year history of mental illness going back to the 1960s."  Appellant filed a notice of the insanity defense, but apparently abandoned this defense during trial.  Although the jury did not hear any evidence of appellant's mental illness during the guilt stage, it was admitted during the punishment hearing before the judge.  Various mental health exhibits contained diagnoses of schizophrenia and reports of "hearing voices" dating back several years before this offense.  These exhibits also noted appellant's rough appearance, his poor hygiene, and bad grooming. These records, dating back to 1969, included some documents from state hospitals to which appellant had been admitted when he was a child.  His sister testified at punishment that appellant was on Social Security disability for several reasons:  "Schizophrenic, manic depressant, can hardly hear, back

pipe in his pocket when he was arrested, and the arresting officer thought he was acting "strange," possibly due "to him inducing an illegal narcotic."

Even with fully crediting the testimony of Beatrice and her brother, who were understandably terrified by their encounter with this most peculiar stranger, and discrediting appellant's version, I am nevertheless left with only speculation about what appellant's actual intentions were. Maybe they were nefarious; certainly the children believed that they were. Maybe he intended to secret or hold Beatrice in a place where she would not likely to be found just for "kicks" or because "the voices" told him to. Or maybe (as the jury here found) he intended to secret or hold her in such a place with a second, "aggravated intent," to hold her for the purpose of ransom, or use as a hostage, or to facilitate the commission of a felony such as assault, sexual assault or terrorize her or her brother or mother.[20] Maybe he intended, as the dissent in the court of appeals noted, "to fondle her on the scene, to rape her on the scene, or to steal her bicycle."[21] None of these acts required an intent to abduct Beatrice. Maybe appellant's intentions were not nefarious. Maybe he wanted to put Beatrice on his shoulders or simply grab her and move her out of his way. Maybe he simply intended to

---

problems, and I can't think of the fifth one." The only evidence contained in the record suggesting that appellant was interested in young girls was a conclusory hearsay report from Big Spring State Hospital, made when appellant was 14 years old, that said he had "a history of compulsive aggressive sexual acting out toward girls his own age and younger."

[20] Strangely, appellant did not specifically challenge the sufficiency of evidence to prove this second, aggravated, intent on appeal, but it is, nonetheless, a required element for conviction.

[21] *Laster,* 229 S.W.3d at 795 (Dauphinot, J., dissenting).

follow "the voices" in his head, whatever they told him.  But evidence of his intent to do any

one of these things is lacking.  What we do know is that he intentionally "restrained" Beatrice

by grabbing her around the waist, albeit only for a few seconds.[22]  And that restraint was, as

a matter of law, without consent because Beatrice was less than fourteen years of age and her

mother, who was waiting at home to make pancakes for her children, had not "acquiesced

in the movement or confinement."[23]

In this case, assuming appellant had the intent to commit rape or some other felony,

it would be up the jury to distinguish between whether a substantial interference with the

victim's liberty was intended, or just a slight interference.  Here, the jury could only

speculate which, and, of course, there is no evidence of intent to commit such a felony in the

---

[22] The most famous historical test for assessing the sufficiency of evidence to establish an attempt is the so-called "stop the film" test:

> If the example may be permitted, it is as though a cinematograph film, which has so far depicted merely the accused person's acts without stating what was his intention, had been suddenly stopped, and the audience were asked to say to what end those acts were directed. If there is only one reasonable answer to this question then the accused has done what amounts to an "attempt" to attain that end. If there is more than one reasonably possible answer, then the accused has not yet done enough.

J.W.C. Turner, *Attempts to Commit Crimes*, 5 Cambridge L. J. 120, 237-38 (1934); *see Hamiel v. State*, 285 N.W.2d 639, 645  (Wis. 1979) (quoting Turner and stating that "in the crime of attempt, it is primarily the acts of the accused which provide evidence of the requisite mental intent. The acts of the accused committed in furtherance of the intended substantive crime '. . . must not be so few or of such an equivocal nature as to render doubtful the existence of the requisite criminal intent.'").

[23] *See* TEX. PENAL CODE § 20.02(a).

first place.[24]

The majority points to *Fann v. State*,[25] and *Megas v. State*[26] as cases in which courts

have held that a rational factfinder may infer an intent to secret or hold a person in a place

where that person is unlikely to be found when a defendant isolates a person from anyone

who might be of assistance.  Indeed, that is true, but in those cases, the defendant had

---

[24] *See e.g.*, *Green v. State*, 7 So. 326  (Miss. 1889).  In that case, the syllabus states, The appellant has been convicted of assault with intent to commit rape. The prosecutrix testified that she was riding in the daytime alone and on horse-back along the public road, about two miles from the town of Hazlehurst, when reaching a place where the public road crosses the railroad, she noticed a negro man standing on the crossing. Hearing a train approaching, she stopped and turned the horse's head towards the man, thinking, as she says, that he could assist her if the train frightened her horse. After riding two or three hundred yards beyond the crossing, she noticed that the man was following her on foot, evidently having traveled briskly, and she had ridden but little further when he came hurriedly up behind her and caught her riding-skirt. She immediately uttered an outcry and urged on her horse, and the man, without having spoken, fled in another direction. The prosecutrix on the trial identified the defendant. This was all the evidence. The jury convicted the accused. He moved for a new trial because of the insufficiency of the evidence, and the motion being overruled, appeals. . . .

The evidence is insufficient to support the verdict of the jury. We may conjecture the purpose of the defendant to have been to commit a rape, but, on the facts disclosed, it is conjecture only, and not an inference reasonably drawn from the evidence. The probabilities may be greater that a rape was intended rather than robbery or murder; but mere probability of guilt of a particular crime, and that, too, springing more from instinct than from proved facts, cannot support a verdict of guilty.

There is great danger of improper convictions in cases of this character, and, while the court should not for that reason invade the province of the jury, the danger admonishes us of the necessity of standing firmly upon the right and duty of proper supervision and control of them.
*Id.* at 326.

[25] *Fann v. State*, 696 S.W.2d 575, 576 (Tex. Crim. App. 1985).

[26] *Megas v. State*, 68 S.W.3d 234, 240 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)

actually performed the act of isolating the victim from others.  In *Fann*, the evidence showed

> that the victim of the kidnapping, a sixteen month old infant, along with her mother, was abducted sometime after 9:00 p.m. while visiting the grave of a deceased brother. They were forcibly driven away from the cemetery and around other parts of the city. The evidence reveals a constantly shifting path throughout the City of Irving. The victims were taken some distance from the area in which they might reasonably have been found and were kept isolated from anyone who might have been of assistance. They were later returned to the cemetery by appellant.[27]

Faced with that evidence, we held "that this forcible removal [of the victims] against their will and the taking of them to some other, unknown places was sufficient for the jury to conclude that the offense was committed as charged to them in the court's instructions, and is sufficient to support their verdict."[28]

> In *Megas v. State*, the evidence was similarly concrete:

> Linda Tyler observed appellant holding onto Tanner with one hand while beating her with the other. Tyler also saw Tanner running away from the car and attempting to jump over the barricade. When Tyler pulled over to render aid and began honking her horn, appellant stopped hitting Tanner, dragged her into the car, and drove away. [29]

The First Court of Appeals held that, from this evidence, a jury could infer that Tanner was attempting to escape, and that appellant substantially interfered with her liberty by assaulting her and forcing her back into the car."[30]

---

[27] 696 S.W.2d at 576.

[28] *Id.*

[29] 68 S.W.3d at 239.

[30] *Id.*

In this case there is no such evidence of an intent to isolate. There was no car waiting around the corner.[31] There were no ropes in Laster's pocket. He did not even use both hands. He did not spring out from some hiding place to grab Beatrice.[32] He did not state any intention.[33] His conduct–except for grabbing Beatrice around the waist–was wholly ambiguous as to his possible future intent.[34] As the California Supreme Court once noted,

---

[31] *People v. Fields*, 56 Cal. App. 3d 954, 956 (Cal. Ct. App. 1976) ("Where, as here, a strange man seizes the person of a young girl on a residential street and orders her to get into a vehicle whose motor is running, the specific intent and the affirmative act required to constitute the crime of attempted kidnaping are adequately manifested.").

[32] *See People v. Lamkey*, 608 N.E.2d 406, 409-10 (Ill. Ct. App. 1992) (the defendant jumped out of a doorway to grab a ten-year-old girl walking home from school, pulled her into a hallway, pushed her against the wall, and sexually assaulted her; nevertheless, aggravated kidnapping conviction reversed, in part because crime occurred "in the vestibule of a building located only a couple of steps away from one of the busiest thoroughfares in Chicago," and defendant "remained within public view in the vestibule in an area clearly visible to anyone walking or driving down the street.").

[33] *See People v. Cruz*, 296 A.D.2d 22, 25 (N.Y. App. Div. 2002) (evidence sufficient to support attempted kidnapping where defendant approached the five-year-old boy, told him, "I want to take you home," and grabbed him, clearly indicating that his objective was abduction); *People v. Martinez*, 973 P.2d 512, 523 (Cal. 1999) (attempted kidnapping of a person under the age of 14 supported by evidence that "[W]hen the defendant grabbed Janet, he demanded she take him to Ramona, who had escaped to an apartment complex located on the other side of a parking area behind the house").

[34] I could find only one American case in which, under facts similar to these, a court upheld an attempted kidnapping conviction against a claim that the conviction was obtained against the overwhelming weight of the evidence. In *Hersick v. State*, 904 So.2d 116 (Miss. 2004), the evidence showed that

> An eleven-year old girl and her eight-year-old brother finished shopping at the Wal-Mart in Lucedale and raced to the nearby Winn-Dixie where their parents were grocery shopping. Larry Hersick, a transient, was sitting outside the Wal-Mart on a block of concrete. As the children raced past Hersick, he grabbed the girl by her upper right arm and pulled her a distance of about five to ten feet into the parking lot. The girl jerked away from Hersick and ran to the Winn-Dixie with her brother.
>
> The girl's father called the police, who rushed to the Wal-Mart to find

The reason for requiring evidence of a direct act, however slight, toward consummation of the intended crime, is . . . that in the majority of cases up to that time the conduct of the defendant, consisting merely of acts of preparation, has never ceased to be equivocal. . . . [S]o long as the equivocal quality remains, no one can say with certainty what the intent of the defendant is.[35]

Oftentimes facts do speak for themselves.  But with the offense of criminal attempt,

the established facts must be highly indicative of the defendant's intent to commit a specific

crime.[36]  These facts, even viewed in the light most generously and favorably to the State, are

---

Hersick still sitting on the block of concrete. Hersick was arrested, indicted, tried and convicted of attempted kidnaping, and sentenced to ten years' imprisonment.
*Id.* at 120. The legal analysis by the Supreme Court of Mississippi was contained in one sentence: "Accepting as true all the evidence in this case which supports the conviction, we are unable to say that the conviction was against the overwhelming weight of evidence. This claim is therefore without merit." *Id.* at 127.  This analysis is too succinct to be useful.

[35] *People v. Miller*, 42 P.2d 308, 310 (Cal. 1935).

[36] *See, e.g, United States v. Cruz-Jiminez*, 977 F.2d 95, 101-02 (3d Cir. 1992) (stating that many federal courts of appeals have held that in order to support an attempt conviction "the prosecution must prove: (1) the intent, or kind of culpability otherwise required, to engage in the criminal conduct; and (2) conduct constituting a 'substantial step' toward commission of the substantive offense that strongly corroborates the criminal intent"); *United States v. Oviedo*, 525 F.2d 881, 884-85 (5th Cir. 1976) ("When the question before the court is whether certain conduct constitutes mere preparation which is not punishable, or an attempt which is, the possibility of error is mitigated by the requirement that the objective acts of the defendant evidence commitment to the criminal venture and corroborate the mens rea. To the extent that this requirement is preserved it prevents the conviction of persons engaged in innocent acts on the basis of a mens rea proved through speculative inferences, unreliable forms of testimony, and past criminal conduct.") (internal citation omitted); *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir. 1974) (explaining that, to constitute criminal attempt,  "First, the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting. . . . Second, the defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime. A substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent.").

fatally equivocal and ambiguous.[37]  I conclude that no rational juror could find, beyond a reasonable doubt, that, at the moment appellant grabbed Beatrice, he had the specific intent to secrete or hold her in a place where she was unlikely to be found. [38]

I would reverse the judgment of the court of appeals, modify the trial court's conviction from an attempted aggravated kidnapping to one for unlawful restraint, and remand the case for a new punishment hearing.[39]  The jury was charged on the lesser-

---

[37] The prosecutor argued to the jury that these facts did speak for themselves:  "there's only a couple of reasons why a grown man would try to steal away a little girl, to physically abuse her or sexually abuse her.  Those are two of the six or seven options of the intent that's required in this case.  You can infer those, intent.  And that'll get you there."

[38] Defense counsel argued just that at his motion for directed verdict:
[T]he State has failed to provide any proof or evidence that it was Mr. Laster's intent to abduct the child.
       And if you'll recall, abduct has a very specific meaning under the purposes of the kidnapping statute.  And that says that a person means to secrete or secret or hold him in a place where he's not likely to be found . . . .  There's been no testimony to indicate that Mr. Laster had any specific intent to take this child anywhere, let alone to a place where she couldn't be found.
Counsel added that "there's been no evidence presented by either, in the State's case or on any kind of rebuttal, that would show that any of these aggravating factors were present."  Counsel objected to the inclusion of the attempted aggravated kidnapping charge "on the basis that I do not believe there's been sufficient evidence presented to warrant that charge."  He is correct unless one accepts the prosecutor's proposition that, as a matter of law, there are only two reasons why any grown man "would try to steal away a little girl."  I cannot accept that legal proposition.

[39] I note that the State enhanced this offense with a prior conviction for aggravated kidnapping with threats of deadly force.  If the facts underlying that prior conviction were even vaguely similar to those in the present case, evidence of that former offense would surely have been admissible and admitted in this case to establish appellant's intent. *See Plante v. State*, 692 S.W.2d 487, 491-92 (Tex. Crim. App. 1985).

included offense of unlawful restraint, and the evidence is clearly sufficient to support it.[40]

Filed: January 14, 2009

Publish

---

[40] *Haynes v. State*, __S.W.3d__ , No. PD-1923-06, 2008 Tex. Crim. App. LEXIS 569 (Tex. Crim. App. Apr. 30, 2008) ("an appellate court may in cases like this reform a judgment to reflect a conviction for the lesser-included offense when that lesser-included offense was submitted in the jury charge").