938 So.2d 352 (2006)
Otis BONDS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00853-COA.
Court of Appeals of Mississippi.
September 26, 2006.
*354 William E. Goodwin, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., GRIFFIS and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Otis Bonds was convicted in the Circuit Court of Pike County of shooting into an automobile and of possession of a firearm by a felon. Tried as a habitual offender, Bonds was sentenced to five years' imprisonment for the shooting and three years' imprisonment for the possession of a firearm, with the sentences to run consecutively. He was also ordered to pay full restitution in an unspecified amount, court-appointed attorney fees in the amount of $500, and court costs. Bonds makes a single argument on appeal; he claims that the trial court erred by not dismissing the charges because he was denied his right to a speedy trial. Finding no error, we affirm.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. As Bonds's appeal is directed not at his guilt or innocence of the crimes charged, but instead on whether he was brought to trial in a timely manner, our recitation of the facts focuses not upon the circumstances of the crimes but upon the events occurring thereafter. On April 26, 2002, Bonds was observed shooting into an automobile outside a residence in Summit, Mississippi. He was arrested on August 15, 2002, and released on bond less than two weeks later.
¶ 3. On July 9, 2003, Bonds was indicted on three charges: shooting into a motor vehicle in violation of Mississippi Code Annotated section 97-25-47 (Rev.2000); shooting into an occupied dwelling in violation of Mississippi Code Annotated section 97-37-29 (Rev.2000); and possession of a firearm by a felon contrary to Mississippi Code Annotated section 97-37-5 (Rev. 2000). The indictment also alleged that Bonds had been twice convicted of felonies and thus was a habitual offender. Bonds waived arraignment on August 4, 2003.
¶ 4. The district attorney moved the court to revoke the bond on October 1, 2003 due to Bonds's arrest and indictment on additional charges of aggravated assault and possession of a firearm by a convicted felon; the circuit judge signed the order revoking the bond on October 27, 2003. Bonds immediately filed a motion to dismiss for lack of speedy trial on October 30, 2003. A hearing was held on Bonds's motion on December 8, 2003. The circuit judge held that the length of the delay in bringing Bonds to trial was presumptively prejudicial since it was longer than eight months; however, the judge *355 found that the cause of the delay, the arresting officer's deployment to Iraq, was reasonable and that the City of Summit had submitted the case to the grand jury in "due course."
¶ 5. Bonds filed a second motion to dismiss for lack of a speedy trial on February 26, 2004, and a hearing on the motion was held March 15, 2004. Instead of ruling on the motion, the circuit judge set the case for trial two days later. Making no objection to this resolution, Bonds was tried on March 17, 2004, 580 days after his arrest and 226 days after his waiver of indictment. He was convicted of shooting into an automobile and possession of a firearm by a felon. An order of nolle prosequi was entered to the charge of shooting into an occupied dwelling.

ANALYSIS
¶ 6. A defendant's successful speedy trial challenge results in dismissal of the charge against him. Strunk v. United States, 412 U.S. 434, 440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); Smith v. State, 550 So.2d 406, 409 (Miss.1989). Bonds contends that the delay between the time of his arrest, August 15, 2002, to his subsequent trial on March 17, 2004 (580 days) violated his speedy trial rights. Bonds argues that he twice asserted his speedy trial right and was prejudiced as a result of the delay in conducting his trial in that he lost his job at Wal-Mart as a result of being unduly incarcerated. Because of the actions or inactions of the State regarding his speedy trial rights, Bonds asks that we render his conviction. The State counters that there was "good cause" for the delay in bringing Bonds to trial because the arresting officer, Summit Police Officer David Harris, was called to active duty in Iraq in October of 2002, and that the State tried Bonds in "due course."

STANDARD OF REVIEW
¶ 7. Review of a speedy trial claim involves a question of fact: whether the trial delay arose from good cause. Flora v. State, 925 So.2d 797, 814(¶ 58) (Miss.2006) (citing DeLoach v. State, 722 So.2d 512, 516 (¶ 12) (Miss.1998)). We will uphold the trial court's finding of good cause if that decision is supported by substantial, credible evidence. Id. (citing Folk v. State, 576 So.2d 1243, 1247 (Miss.1991)). However, if no probative evidence supports the trial court's findings, we must reverse the decision and dismiss the charge. Ross v. State, 605 So.2d 17, 21 (Miss.1992) (citing Strunk, 412 U.S. at 440, 93 S.Ct. 2260). The State bears the burden of proving good cause for the speedy trial delay, and thus bears the risk of non-persuasion. Flores v. State, 574 So.2d 1314, 1318 (Miss.1990); Nations v. State, 481 So.2d 760, 761 (Miss.1985). Good cause is a factual finding which is not different from any other finding of fact and thus, an appellate court should not disturb the finding when the finding is based upon substantial evidence identified from the record. McGhee v. State, 657 So.2d 799, 803 (Miss.1995).

A. The Constitutional Rights to a Speedy Trial
¶ 8. The Sixth Amendment to the United States Constitution entitles Bonds to a "speedy and public trial." See United States Const. amend. VI. The Supreme Court has observed that "the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment. That right has its roots at the very foundation of our English law heritage." Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). The federal constitutional right is applied to the states through the Fourteenth Amendment. Id. at 222-23, 87 S.Ct. 988. *356 Additionally, Article 3, section 26 of the Mississippi Constitution of 1890 guarantees a criminal defendant "a speedy and public trial." This right, as with the federal constitutional right, attaches when a person has been accused, either by way of arrest, indictment or information. Stark v. State, 911 So.2d 447, 450(¶ 6) (Miss.2005). The Supreme Court has observed that the speedy trial right serves a threefold purpose: (1) to protect the accused against oppressive pretrial imprisonment; (2) to relieve the accused of the anxiety and public suspicion due to an unresolved criminal charge; and (3) to protect against the risk that evidence will be lost or memories dimmed by the passage of time thus impairing a defendant's ability to defend himself or herself. United States v. Loud Hawk, 474 U.S. 302, 312, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (quoting United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). Thus, the protection given by the right to a speedy trial is against arbitrary and oppressive delays in prosecution.
¶ 9. In Barker v. Wingo, 407 U.S. 514, 529-34, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) the Supreme Court announced a four-part balancing test for determining whether a defendant's right to speedy trial has been violated. The four factors are (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. Id. at 530, 92 S.Ct. 2182. The Mississippi Supreme Court has adopted the Barker analysis as applicable to the state constitutional speedy trial right; accordingly, we will consider the constitutional claims together. See Skaggs v. State, 676 So.2d 897, 900 (Miss.1996). For the purpose of the analysis, the conduct of both parties is weighed, and no one factor is outcome determinative. Fleming v. State, 604 So.2d 280, 299 (Miss.1992). The weight which a court gives to each factor depends on the facts of the particular case. Id.

The Barker Analysis

(1) Length of the Delay

¶ 10. This first factor has been called a triggering mechanism because until there is some delay which is presumptively prejudicial, there is no need for an inquiry into the other balancing test factors. Barker, 407 U.S. at 531-32, 92 S.Ct. 2182. Thus there must first be a finding of a "presumptively prejudicial" delay or our inquiry on the issue ends. Id. This analysis is largely a function of mathematics and calendar, with the triggering date in the instant case being the date of the defendant's arrest. An eight-month delay between arrest and trial has been found to be presumptively prejudicial. Smith v. State, 550 So.2d 406, 408 (Miss.1989). Bonds was arrested on August 15, 2002, and stood trial on March 17, 2005-580 days after arrest. Thus, we find that there was presumptive prejudice and further evaluation of his constitutional rights is required.

(2) Reason for Delay

¶ 11. "Once there is a finding that the delay is presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." DeLoach v. State, 722 So.2d 512, 517 (¶ 17) (Miss.1998). Thus, we must determine the reason for the delay and examine the unique circumstances of each case. Stark v. State, 911 So.2d 447, 450(¶ 11) (Miss.2005). The Barker court said that on this factor different weights should be given to different reasons for delay. Barker, 407 U.S. at 531, 92 S.Ct. 2182. A deliberate attempt by the State to delay the trial in order to *357 hamper the defense should be weighted heavily against the State. Id. However, the Supreme Court said that a more neutral reason for the delay such as negligence or overcrowded dockets should be weighed less heavily but should, nevertheless, be considered because "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id. The burden calls on the State to articulate the reason for the delay by showing either that the delay was caused by the defendant or was caused for a good cause. Stark, 911 So.2d at 450 (quoting Hersick v. State, 904 So.2d 116, 121(¶ 7) (Miss.2005)).
¶ 12. We note at the outset of our analysis of this factor that there were two hearings on separate motions to dismiss for lack of a speedy trial filed by Bonds. The first hearing was held on December 8, 2003, 480 days after Bonds's arrest, and the second hearing was held on March 15, 2004, 578 days after his arrest.
¶ 13. At the first hearing, the court found that the State had shown good cause for the delay as the State argued that the reason for the delay was because the officer who made the case was deployed to Iraq after the arrest. The court said that it was "rational" to expect the officer who made the case to be the officer who would present it to the grand jury. Further the court determined the City of Summit presented the case in "due course." The court made its finding despite noting that the case had ultimately been presented without the presence of the arresting officer.
¶ 14. Bonds asserts that this factor should weigh heavily against the State, as he claims the record is devoid of a single instance where he did anything to prevent the State from bringing him to trial. The State cites Hersick, 904 So.2d at 123(¶ 14), for its justification of the delay as the case officer, Officer Harris, was deployed overseas. In Hersick the trial court found good cause for the delay in bringing the defendant to trial where the arresting officer was deployed overseas, and the Mississippi Supreme Court affirmed. While the State could have and did ultimately bring the case to trial without Officer Harris, we find that there was substantial evidence to support the trial court's finding that the case was brought in due course.

(3) The Defendant's Responsibility to Assert His Right

¶ 15. The accused's assertion of or failure to assert the right to a speedy trial is one of the factors to be considered in an inquiry on whether the speedy trial right was denied. Although a defendant does not have an obligation to bring himself to trial, he will earn "points . . . on his side of the ledger" when he has made a demand for a speedy trial. Stevens v. State, 808 So.2d 908, 917(¶ 22) (Miss.2002). Bonds claims that he asserted his right to a speedy trial by filing two motions to dismiss five months apart. After his first motion to dismiss was overruled, he was not tried and therefore filed another motion to dismiss for failure to provide a speedy trial on February 26, 2004. After a hearing on this motion on March 15, 2004, the court did not rule on the motion, but instead set the case for trial two days later on March 17, 2004. The State cites Summers v. State, 914 So.2d 245, 253 (¶ 20) (Miss.Ct.App.2005) for the proposition that a demand for dismissal for violation of the right to a speedy trial is not the same as a demand for a speedy trial. The State is correct. In Perry v. State, 637 So.2d 871, 875 (Miss.1994) the Mississippi Supreme Court held that a motion for dismissal for violation of the speedy trial right is not the equivalent of a demand for a speedy trial. The court stated that the motion to dismiss *358 seeks discharge of the defendant, and not a speedy trial for him. We are not allowed therefore to count in Bonds's favor his two pre-trial motions seeking dismissal of the charges. We find that Bonds did not request a speedy trial but instead twice asked that the charges be dismissed against him because of an alleged lack of speedy trial. Thus, this factor weighs in favor of the State.

(4) Prejudice to a Defendant

¶ 16. The Barker court instructed that prejudice to the defendant should be assessed in light of the following interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern by the accused due to an unresolved criminal charge; and (3) to limit the possibility that the defense will be impaired. United States v. Loud Hawk, 474 U.S. 302, 312, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (quoting United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). The Court said prejudice should be examined in light of these interests of a defendant with the last interest, possible prejudice to the defendant, being the most important Barker, 407 U.S. at 532, 92 S.Ct. 2182.
The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. . . . [E]ven if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion and often hostility.
Id. at 532-33, 92 S.Ct. 2182.
¶ 17. Prejudice to a defendant may manifest itself in two ways. First a defendant may suffer prejudice because of the restraints to his liberty, whether by "loss of his physical freedom, loss of a job, loss of friends or family, damage to his reputation, or anxiety." Stevens v. State, 808 So.2d 908, 917(¶ 23) (Miss.2000) (citing Duplantis v. State, 708 So.2d 1327, 1336 (Miss.1998)). Secondly, the delay may impair the accused's defense. Id.
¶ 18. Bonds argues prejudice by alleging that he was incarcerated from December 2002 until the trial in March of 2004 and that as a result of the incarceration without a speedy trial he lost his job at Wal-Mart. The record reflects, however, that Bonds was released on bond from August 26, 2002 until October 27, 2003 when the bond was revoked due to a subsequent indictment.
¶ 19. The State argues that there was no proof of harm regarding the third and most important interest, the possibility of impairment of his defense. The State correctly points out that incarceration alone is not sufficient to establish Barker prejudice. As to the most important factor, prejudice to his defense, Bonds has offered no evidence of prejudice, such as lost evidence or unavailability of witnesses as to how his defense was impaired. Thus, we cannot find that Bonds was prejudiced by the delay.
¶ 20. We note that Bonds never received a ruling from the trial court on his second motion for speedy trial. Instead the trial court ordered, without objection, Bonds to be tried two days later. The oft-cited rule remains that it is the duty of the movant to bring his motion to the attention of the trial court and obtain a *359 ruling thereon, and his failure to do so constitutes a waiver of the motion. Anthony v. State, 843 So.2d 51, 54(¶ 11) (Miss. 2002); Biggs v. State, 741 So.2d 318, 327(¶ 35) (Miss.Ct.App.1999). Bonds brought his motion for hearing, but instead of obtaining a ruling on the motion, he made no objection to the trial court's resolution of the issue: setting of his trial two days later. Therefore, we find that Bonds waived his second motion.
¶ 21. When we apply the Barker factors to Bonds's case, we find that even though he incurred a delay in having his charge advanced to trial, the delay was not of constitutional dimensions. We cannot say that Bonds was denied his right to a speedy trial.

B. The Statutory Right
¶ 22. In addition to the constitutional rights to speedy trial, Mississippi, by statute, specifically requires that a defendant be brought to trial within 270 days after arraignment "[u]nless good cause [can] be shown, and a continuance duly granted by the court." Miss.Code Ann. § 99-17-1 (Rev.2000). In the instant case, there were only 226 days from Bonds's arraignment to his trial; accordingly, his statutory right to a speedy trial was not violated.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF COUNT I, SHOOTING INTO AN AUTOMOBILE AND SENTENCE OF FIVE YEARS; COUNT III, POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER, WITH SENTENCE IN COUNT III TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I AND CONCURRENTLY WITH SENTENCE IMPOSED IN CAUSE NO. 03-271-KA AND PAY FULL RESTITUTION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.