KING, C.J.,
 

 for the Court:
 

 ¶ 1. At the conclusion of his April 29, 2009, trial, Larry Press Wells was convicted in the Circuit Court of Harrison County of possession of cocaine with intent to transfer and was sentenced as a habitual offender to sixty years in the custody of the Mississippi Department of Corrections (MDOC), without eligibility for probation or parole. Aggrieved, Wells appeals his conviction and sentence, raising nine issues:
 

 I. Whether the circuit court erred by denying his motion for a directed verdict and motion for a new trial;
 

 II. Whether the circuit court erred by allowing the State to amend the indictment, charging him as a habitual offender;
 

 III: Whether the circuit court erred by allowing the State to amend the indictment, charging him as a prior drug offender;
 

 IV: Whether the circuit court erred by allowing the State to amend the indictment multiple times;
 

 V: Whether he was denied his right to a speedy trial;
 

 VI: Whether his sixty-year sentence constitutes cruel and unusual punishment;
 

 VII: Whether the circuit court erred by denying his motion to suppress evidence;
 

 VIII: Whether he received ineffective assistance of counsel; and
 

 IX: Whether there was cumulative error that requires reversal.
 

 Finding no error, we affirm Wells’s conviction and sentence.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On May 24, 2007, the Gulfport Police Department conducted several undercover drug buys in the Magnolia Grove neighborhood of Gulfport, Mississippi. Undercover police officer Michael Guynes testified regarding what transpired that day with the defendant Wells.
 

 ¶ 3. For the undercover operation, Officer Guynes was given a car, $50 in marked bills, a tape recorder, and two crack pipes, which were used as props. Officer Guynes met Wells on the corner of 26th Street and Roberts Avenue and asked Wells for $40 worth of crack cocaine. According to Officer Guynes, Wells then got into the car with him, directed him to an apartment complex, and instructed him to park be
 
 *45
 
 hind some shrubs. Officer Guynes testified that he gave Wells $40. Then, Wells got out of the car and walked behind the shrubs.
 

 ¶4. Officer Guynes testified that when Wells returned, he grabbed a crack pipe and put some of the drugs into it. Officer Guynes asked Wells to give him his share of the drugs. In response, Wells asked Officer Guynes if he wanted to smoke some of the drugs before receiving his share. Officer Guynes told Wells that he did not want to smoke at that time and again asked for his drugs. Wells did not oblige. Next, Officer Guynes gave the take-down signal, alerting the other police officers to arrest Wells.
 

 ¶ 5. Officer Mark Joseph testified regarding Wells’s arrest. After hearing the take-down signal, the police officers moved in to arrest Wells. Officer Joseph testified that he opened the passenger’s door of the car, grabbed Wells by his right wrist, pulled Wells to the ground, and handcuffed him. When Officer Joseph handcuffed Wells, he saw a glass pipe, a $20 bill, and a rock-like substance on the ground in close proximity to Wells. Officer Joseph gave these items to Detective Bradley Walker, who marked the evidence and sent it to the Mississippi Crime Laboratory for examination.
 

 ¶ 6. John Moran, a forensic scientist for the Mississippi Crime Laboratory, tested the evidence. He testified that the substance was determined to be cocaine, weighing less than a tenth of a gram.
 

 ¶ 7. Based on this evidence, a jury in the Harrison County Circuit Court convicted Wells of possession of cocaine with intent to transfer. Prior to trial, the State filed motions to amend the indictment to charge Wells as a habitual offender (filed October 11, 2007) and as a prior drug offender (filed April 24, 2009). The circuit court granted the State’s motions. Accordingly, the circuit court sentenced Wells as a habitual offender-and as a prior drug offender to sixty years in the custody of the MDOC. Wells filed a motion for a judgment notwithstanding the 'verdict (JNOV) or, alternatively, a new trial. The circuit court denied the post-trial motions. Aggrieved, Wells timely filed his notice of appeal.
 

 ANALYSIS
 

 I. Sufficiency and Weight of the Evidence
 

 ¶ 8. Wells argues that the verdict is against the overwhelming weight of the evidence, and he argues that there was no evidence that he intended to transfer the cocaine to Officer Guynes. The State argues that the evidence was sufficient for a reasonable jury to find Wells guilty of possession with intent to transfer.
 

 ¶ 9. Wells combines his arguments regarding the weight of the evidence and the legal sufficiency of the evidence. Because these are two distinct issues, we discuss each separately.
 

 A. Sufficiency of the Evidence
 

 ¶ 10. A motion for a directed verdict and a motion for a JNOV challenge the legal sufficiency of the evidence.
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶16) (Miss.2005). The circuit court must view all of the credible evidence, which is consistent with the defendant’s guilt, in the light most favorable to the State.
 
 See id.
 
 at (¶ 17). On appeal, we will not disturb the circuit court’s ruling if “the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ”
 
 Id.
 
 at (¶ 16) (quoting
 
 Carr v. State,
 
 208 So.2d 886, 889 (Miss.1968)).
 

 
 *46
 
 ¶ 11. Wells argues that the State failed to prove that he intended to sell, transfer, or distribute drugs as required under Mississippi Code Annotated section 41-29-139(a)(1) (Rev.2009) because: (1) no one saw him purchase the drugs; (2) he already had the drugs on his person; and (3) he did not give Officer Guynes the drugs. Thus, Wells maintains that he could only be guilty of possession of cocaine.
 

 ¶ 12. Wells admits that he had possession of cocaine, but he denies that he purchased the- cocaine from another person to sell to Officer Guynes. We find that it is immaterial whether Wells actually purchased the cocaine from a third party. The true inquiry is whether Wells intended to sell, transfer, or deliver the cocaine to Officer Guynes. Wells did not physically transfer any cocaine to Officer Guynes. But “[a] defendant can commit the crime of possession with intent to transfer without having actually transferred any cocaine.”
 
 Vaxter v. State,
 
 744 So.2d 846, 849 (1121) (Miss.Ct.App.1999).
 

 ¶ 13. Wells assured Officer Guynes that he could obtain $40 worth of cocaine for him and directed Officer Guynes to a location where Wells got out of the car. Wells returned to the car with cocaine, put the cocaine in a crack pipe, and offered it to Officer Guynes to smoke. Viewing this evidence in the light most favorable to the State, we find that a reasonable juror could have found beyond a reasonable doubt that Wells intended to transfer/deliver cocaine to Officer Guynes. Accordingly, we find that the circuit court did not err by denying Wells’s motion for a directed verdict and his motion for a JNOV. This issue is without merit.
 

 B. Weight of the Evidence
 

 ¶ 14. A motion for a new trial challenges the weight of the evidence.
 
 Bush,
 
 895 So.2d at 844 (¶ 18). On appeal, we will not disturb the circuit court’s denial of a motion for a new trial unless “[the verdict] is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Id.
 

 ¶ 15. Wells argues that he did not intend to sell, transfer, or distribute any cocaine to Officer Guynes. Instead, Wells claims that he only intended to smoke the cocaine himself. As noted above, although Wells did not physically give Officer Guynes the cocaine, his actions indicated that he intended to do so. Viewing the evidence in the light most favorable to the verdict, we cannot say that the verdict was against the overwhelming weight of the evidence. Accordingly, we find that the circuit court did not err by denying Wells’s motion for a new trial. This issue is without merit.
 

 II. Amendment to the Indictment:
 

 Habitual Status
 

 ¶ 16. Next, Wells argues that the circuit court erred by allowing the State to amend his indictment to charge him as a habitual offender. Specifically, Wells argues that the amendment to the indictment failed to specify whether his previous convictions occurred in the First or the Second Judicial District of Harrison County. The State argues that this issue is procedurally barred from review because it was not raised before the circuit court. In the alternative, the State argues that the amendment to the indictment satisfied the requirements of Uniform Rule of Circuit and County Court 11.03(1).
 

 ¶ 17. Wells failed to raise this issue before the circuit court. Thus, it is procedurally barred from review.
 
 Fannings v. State,
 
 997 So.2d 953, 963 (¶35) (Miss.Ct.App.2008). Despite this procedural bar, we find that Wells’s argument is without merit.
 

 ¶ 18. Rule 11.03(1) provides that:
 

 
 *47
 
 In cases involving enhanced punishment for subsequent offenses under state statutes:
 

 1. The indictment must include both the principal charge and a charge of previous convictions. The indictment must allege with particularity the nature or description of the offense constituting the previous convictions, the state or federal jurisdiction of any previous conviction, and the date of judgment.
 

 In Wells’s indictment, the principal offense was listed as possession of cocaine with intent to transfer. The amendment also listed Wells’s two previous convictions: (1) Wells pled guilty in the Circuit Court of Harrison County on May 10, 1993, for felony transfer of a controlled substance and was sentenced to three years; and (2) Wells pled guilty in the Circuit Court of Harrison County on May 10, 1993, for uttering a forgery and was sentenced to three years.
 

 ¶ Í9. In accordance with Rule 11.03(1), the habitual portion of Wells’s indictment included the nature of his convictions, the dates of judgment, and the state jurisdiction of those previous convictions. The rule does not require the State to indicate whether the convictions were obtained in the First or the Second Judicial District of Harrison County, and Wells has failed to provide this Court with any authority in support of his argument. Thus, we determine that Wells’s indictment complied with Rule 11.03(1) and sufficiently charged Wells as a habitual offender. This argument is without merit.
 

 III. Amendment to the Indictment: Prior-Drug-Offender Enhancement
 

 ¶ 20. Wells argues that the circuit court erred by allowing the State to amend his indictment to charge him as a prior drug offender under Mississippi Code Annotated section 41-29-147 (Rev.2009). Again, Wells argues that the amendment was defective because the State did not specify whether his previous drug conviction was obtained in the First or the Second Judicial District of Harrison County. In addition, Wells argues that'the circuit court did not make an on-the-record finding that he was a habitual offender and a prior drug offender. Wells also argues that the State should have sought the sentence enhancement at the same time that it sought to charge him as a habitual offender.
 

 A. First or Second Judicial District of Harrison County
 

 ¶ 21. We addressed Wells’s argument that the State was required to list whether his prior convictions occurred in the First or the Second Judicial District of Harrison County in his previous assignment of error. For the reasons stated above, we find that this argument is without merit.
 

 B. Finding of Habitual and Prior-Drug-Offender Enhancement
 

 ¶ 22. “For this Court to affirm an enhanced sentence ..., the trial court’s basis for imposing the sentence must’ appear in the record on appeal.”
 
 Short v. State,
 
 929 So.2d 420, 426 (¶ 17) (Miss.Ct.App.2006). Wells argues that the circuit court did not make an on-the-record finding that he was a habitual offender and a prior drug offender. The record belies his assertion.
 

 ¶ 23. During Wells’s sentencing hearing, the State presented the circuit court with certified copies of Wells’s pen pack from the MDOC. The pen pack evidenced that Wells had four prior felony convictions — one for uttering a forgery and three for the sale of a controlled substance. The
 
 *48
 
 circuit court only allowed the State to amend Wells’s indictment to reflect the two prior convictions the State raised in its motion: (1) Wells pled guilty in the Circuit Court of Harrison County on May 10, 1993, to felony transfer of a controlled substance and was sentenced to three years; and (2) Wells pled guilty in the Circuit Court of Harrison County on May 10, 1993, to uttering a forgery and was sentenced to three years. The indictments for those felonies were included in the pen pack and showed that the charges arose out of separate incidents.
 

 ¶ 24. The circuit court noted that Wells had been previously convicted of two felony crimes, had served at least one year for each crime, and had been previously convicted of a drug-related crime; thus, Wells was eligible for a sentence enhancement. Based on the foregoing, we determine that the circuit court made an on-the-record finding that Wells was indeed a habitual offender and a prior drug offender. This argument is without merit.
 

 C. Timing of the Amendment
 

 ¶ 25. Wells contends that the State’s amendment to charge him as a prior drug offender was tardy and that the State should have sought this amendment at the same time.that it sought to charge him as a habitual offender. Wells was indicted on October 1, 2007. The State sought to amend Wells’s indictment to charge him as a habitual offender on October 11, 2007. A hearing on the motion was held on November 9, 2007, in which Wells’s trial counsel objected to the amendment. On November 19, 2007, the circuit court entered an order granting the State’s motion to amend the indictment.
 

 ¶ 26. Before Wells’s trial, the State sought to amend his indictment to charge him as a prior drug offender on April 24, 2009. A hearing was held on the motion on April 29, 2009, right before opening statements in the case, and Wells’s trial counsel objected to the amendment. At that time, the circuit court orally granted the State’s amendment; the order granting the amendment was later entered the following day on April 30, 2009.
 

 ¶ 27. Uniform Rule of Circuit and County Court 7.09 provides, in pertinent part, that “[a]ll indictments may be amended ... to charge the defendant as a habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement....” Such an amendment is allowed so long as “the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.”
 
 Id.
 
 In accordance with Rule 7.09, this Court has held that an amendment requested on the day of the trial to add an enhanced penalty was proper where the defendant was apprised of the charge pending against him, was not unfairly surprised, and was afforded a fair opportunity to present his defense.
 
 Williams v. State,
 
 766 So.2d 815, 816-18 (¶¶-5-10) (Miss.Ct.App.2000).
 

 ¶ 28. Prior to Wells’s trial, the State had filed motions to amend the indictment to charge Wells as a habitual offender (filed October 11, 2007) and as a prior drug offender (filed April 24, 2009). Before the State sought to enhance his penalty for being a prior drug offender, Wells was aware that he was being charged as a habitual offender. In addition, Wells was aware that one of his previous offenses was a drug-related offense. We find that the amendment to the indictment did not affect Wells’s opportunity to present his defense. Thus, the circuit court did not err by allowing the State to amend Wells’s indictment, charging him as a prior drug offender. This argument is without merit.
 

 
 *49
 
 IV. Amendment to the Indictment
 

 ¶ 29. Wells argues that the circuit court erred by allowing the State to amend his indictment multiple times. However, Wells has failed to provide any relevant authority in support of his position. “When an appellant fails to cite authority for an argument, a procedural bar operates, and this Court is not obligated to consider that argument.”
 
 Graves v. State,
 
 914 So.2d 788, 798 (¶ 34) (Miss.Ct.App.2005) (citing
 
 White v. State,
 
 818 So.2d 369, 371 (¶ 7) (Miss.Ct.App.2002)). As a result, we find that this argument is procedurally barred from review.
 

 V. Speedy-Trial Violation
 

 ¶ 30. Next, Wells argues that he was denied his constitutional right to a speedy trial. The State argues that Wells failed to bring his motion to the circuit court’s attention, and there was no proof of prejudice to the defense.
 

 ¶ 31. The Sixth and Fourteenth Amendments to the United States Constitution, along with Article 3, Section 26 of the Mississippi Constitution, guarantee a defendant’s fundamental right to a speedy trial.
 
 Thomas v. State,
 
 48 So.3d 460, 474 (¶ 38) (Miss.2010). When determining whether a defendant’s right to a speedy trial has been violated, the circuit court must consider the four factors established by
 
 Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972): “(1) length of delay, (2) reason for delay, (3) defendant’s assertion of his right to speedy trial, and (4) prejudice to the defendant.”
 
 Thomas,
 
 48 So.3d. at 475 (¶41) (citing
 
 Barker,
 
 407 U.S. at 530, 92 S.Ct. 2182). “[N]o one factor is outcome determinative.”
 
 Bonds v. State,
 
 938 So.2d 352, 356 (¶ 9) (Miss.Ct.App.2006). Because each analysis is fact specific, we will uphold the circuit court’s decision as long as it is supported by substantial evidence.
 
 Thomas,
 
 48 So.3d at 474-75 (¶ 39).
 

 ¶ 32. Wb must note that the circuit court never ruled on Wells’s motion to dismiss for a speedy-trial violation. Because a speedy-trial violation affects a defendant’s constitutional rights, we will review Wells’s claim to determine whether the circuit court committed plain error by not ruling on Wells’s claim.
 
 See Johnson v. State,
 
 9 So.3d 413, 416 (¶8) (Miss.Ct.App.2008). Although we conclude that the circuit court did not err, we will address the merits of Wells’s claim.
 

 A. Length of the Delay
 

 ¶ 33. The constitutional right to a speedy trial begins when the defendant is accused of a crime.
 
 Felder v. State,
 
 831 So.2d 562, 567 (¶ 8) (Miss.Ct.App.2002). In this case, Wells’s right to a speedy trial began on the date of his arrest — May 24, 2007. Wells was indicted on October 1, 2007. Thereafter, Wells filed a demand for a speedy trial and a motion to dismiss for a speedy-trial violation on October 25, 2007. The circuit court did not rule on Wells’s motion.
 

 ¶ 34. A delay of eight months or more between the date of arrest and the trial is considered to be presumptively prejudicial.
 
 Poole v. State,
 
 826 So.2d 1222, 1229 (¶ 19) (Miss.2002). Wells’s trial did not begin until April 29, 2009; thus, the delay is presumptively prejudicial. But the Court’s inquiry does not end here.
 

 ¶ 35. Thereafter, the following orders/motions were filed:
 

 .1. On November 5, 2007, the trial court entered an order appointing Wells’s trial counsel and resetting the case .for March 10, 2008.
 

 2. The trial court filed a motion and order for continuance on February 18, 2008, to reschedule Wells’s trial
 
 *50
 
 date because the judges had can-celled the docket for that week. The case was reset to commence on May 12, 2008.
 

 3. On May 23, 2008, the defense filed a motion for a continuance because Wells was to have surgery. In this motion, Wells stated that he waived his right to a speedy trial from this date until October 6, 2008, the new trial date.
 

 4. October 6, 2008, the defense filed a second motion for a continuance, stating that both judges of the First Judicial District of Harrison County had previously prosecuted Wells. In this motion, Wells stated that he waived his right to a speedy trial from this date until January 26, 2009.
 

 5. On January 29, 2009, the defense and the State filed a joint motion for a continuance, stating that Wells was seeking additional time to subpoena witnesses. Wells stated that he waived his right to a speedy trial from this date until March 23, 2009.
 

 6. The last motion for a continuance was filed by the defense on March 25, 2009, stating that Wells would not be available for medical reasons. In this motion, Wells stated that he waived his right to a speedy trial from this date until April 28, 2009, the new trial date.
 

 ¶ 36. Based on our review of the record, the delay attributable to the State is from May 24, 2007, the date of Wells’s arrest, to February 18, 2008, the date of the trial court’s motion and order for a continuance. Because the approximately nine-month delay is presumptively prejudicial, further analysis under
 
 Barker
 
 is required.
 
 Thomas,
 
 48 So.3d at 475 (¶ 43).
 

 B. Reason for the Delay
 

 ¶ 37. Any delay attributable to the State will be charged against the State, and any delay attributable to Wells will be charged against him.
 
 Poole,
 
 826 So.2d at 1229 (¶ 20). “The State bears the risk of non-persuasion regarding the reason for delay and must show whether the defendant caused the delay or that good cause existed for the delay.”
 
 Id.
 
 (citing
 
 Fleming v. State,
 
 604 So.2d 280, 299 (Miss.1992)).
 

 ¶ 38. Because Wells’s motion for a speedy trial was not brought on for hearing, the record is void of any explanation given by the State for the delay from May 24, 2007, to February 18, 2008. But the Court’s review of the record shows that Wells’s trial counsel was not appointed until November, 5, 2007, and the trial was reset to commence on March 10, 2008. We see no evidence of deliberate delay on behalf of the State, and Wells makes no claim of deliberate delay.
 

 ¶ 39. The delay from February 2008 to April 2009, when the trial commenced, is fully explained. Aside from the circuit court’s motion for a continuance, Wells filed the remaining motions, and he waived his right to a speedy trial in those motions. “[Wjhen the defendant causes a delay, he cannot complain and obtain relief.”
 
 McNeal v. State,
 
 911 So.2d 582, 585 (¶ 10) (Miss.Ct.App.2005). Thus, this factor weighs against Wells.
 

 C. Wells’s Assertion of His Right to a Speedy Trial
 

 ¶ 40. “A defendant ‘has no duty to bring himself to trial.... ’ Still he gains far more points under this prong of the
 
 Barker
 
 test where he has demanded a speedy trial.”
 
 Thomas,
 
 48 So.3d at 476 (¶47) (citation omitted). Wells made a demand for a speedy trial on October 25, 2007, approximately five months after his arrest. On the same day, though some
 
 *51
 
 what premature, Wells filed a motion to dismiss for a speedy-trial violation. Thus, we find that Wells asserted his right to a speedy trial.
 

 D. Prejudice to Wells
 

 ¶ 41. When determining whether the defendant suffered prejudice under
 
 Barker,
 
 this Court weighs the following interests: “(1) the prevention of oppressive pre trial incarceration, (2) limitation of the possibility of impairment of defense, and (3) the minimization of anxiety and concern of the accused.”
 
 Id.
 
 at 586, 92 S.Ct. 2182 (¶ 14) (quoting
 
 Barker,
 
 407 U.S. at 532, 92 S.Ct. 2182). Limiting the possibility of the impairment of the defense is the most important consideration.
 
 Bonds,
 
 938 So.2d at 358 (¶ 16).
 

 ¶42. Besides Wells’s bare assertions, there is no evidence that persuades this Court that Wells suffered great prejudice due to his pretrial incarceration or from anxiety. Regarding prejudice to the defense, the most important issue, Wells only argues that the delay in trial allowed the State to amend his indictment twice, seeking an enhanced penalty. As previously ruled, we find that the circuit court did not err by allowing the State to amend the indictment. Also, the record shows that Wells’s trial counsel did object and had an opportunity to be heard on both motions to amend the indictment.
 

 ¶ 43. After considering the totality of the circumstances surrounding Wells’s speedy-trial claim, we rule that his constitutional right to a speedy trial was not violated. This argument is without merit.
 

 VI. Cruel and Unusual Punishment
 

 ¶ 44. Wells argues that the circuit court should have conducted a proportionality analysis because his enhanced sentence of sixty years as a habitual offender and a prior drug offender constitutes cruel and unusual punishment and is clearly disproportionate to the offense. Conversely, the State argues that the circuit court was not obligated to conduct a proportionality analysis because there is no inference of gross disproportionality between Wells’s sentence and the crime charged, and Wells’s sentence is within the statutory limits.
 

 ¶ 45. In support of his argument, Wells relies on
 
 Solem v. Helm,
 
 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In
 
 Solem,
 
 the United States Supreme Court set forth three criteria for circuit courts to consider when conducting a proportionality analysis: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions.
 
 Id.
 
 at 290-91, 103 S.Ct. 3001. However, “[t]he Solem analysis is applied only in rare cases where ‘a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross dispropor-tionality.’ ”
 
 Hudderson v. State,
 
 941 So.2d 221, 224 (¶ 9) (Miss.Ct.App.2006) (quoting
 
 Ewing v. California,
 
 538 U.S. 11, 30, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003)). If the sentence given by the circuit court is within the statutory guidelines, it will generally be affirmed.
 
 Id.
 
 (citing
 
 Tate v. State,
 
 912 So.2d 919, 933-34 (¶¶ 50-53) (Miss.2005)).
 

 ¶ 46. In
 
 Hudderson,
 
 this Court affirmed a defendant’s sixty-year sentence for a sale of cocaine conviction because: (1) it was proven that the defendant was a habitual offender and a prior drug offender, and (2) his sentence did not exceed the statutory guidelines.
 
 Id.
 
 at 224 (¶¶ 8-9). In this case, Wells was charged with possession of cocaine with intent to transfer, which carries a maximum sentence of thirty years in prison. Miss.Code Ann. § 41-29—139(b)(1). The circuit court sentenced
 
 *52
 
 Wells as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007), and he met the requirements to be sentenced to the maximum term of imprisonment prescribed for his crime. Wells’s sentence-was also enhanced under Mississippi Code Annotated section 41-29-147 (Rev.2009), which' allows the circuit court' to double the sentence for a subsequent drug offense. Thus, by law, the circuit court was authorized to double Wells’s sentence from thirty years in prison to sixty years in prison.
 

 ¶ 47. Because Wells’s sentence does not exceed the statutory limits, we affirm his sentence and find that a proportionately analysis is not required. This argument is without merit.
 

 VII. Motion to Suppress Evidence
 

 ¶ 48. Next, Wells argues that the circuit court erred by denying his motion to suppress the videotape documenting his alleged crime because: (1) Officer Guynes did not read Wells his
 
 Miranda
 
 warnings, and (2) the State did not provide him a transcript of the videotaped conversation.
 

 ¶ 49. The admissibility of evidence rests within the circuit court’s sound discretion.
 
 Thames v. State,
 
 5 So.3d 1178, 1187 (¶ 28) (Miss.Ct.App.2009). We will not disturb the circuit court’s ruling absent a finding of an abuse of discretion.
 
 Id.
 

 ¶ 50. Wells contends that the videotape should have been suppressed because Officer Guynes did not read him his
 
 Miranda
 
 warnings when he returned to the car with the cocaine. However, “the
 
 Miranda
 
 warnings are required whenever a suspect is actually under arrest.”
 
 Griffin v. State,
 
 339 So.2d 550, 553 (Miss.1976) (citation omitted). This appeal involves an undercover drug bust conducted by the police. When Wells returned to the car with the cocaine, he was not under arrest at that time. “Law enforcement officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause.”
 
 Id.
 
 at 554 (citing
 
 Hoffa v. United States,
 
 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966)). Thus, there was no obligation for Officer Guynes to give Wells his
 
 Miranda
 
 warnings as soon as Wells had returned to the car with the cocaine.
 

 ¶ 51. Next, Wells argues that the videotape should have been suppressed because the State failed to provide him a transcript of the recording. Officer Guynes testified regarding what transpired during the undercover drug bust, and the videotape was played for the jury. The record suggests that parts of the videotape were inaudible. However, Wells does not claim that he disagrees with any of Officer Guynes’s testimony regarding what transpired during the undercover drug bust. Wells has failed to provide this Court with any authority to support his argument that the State was required to provide a transcript of the recording. “A party’s failure to provide authority for its claims on appeal relieves [the appellate court] from having to consider the issue.”
 
 Latiker v. State,
 
 918 So.2d 68, 76 (¶ 19) (Miss.2005).
 

 ¶ 52. Hence, we find that the circuit court did not err by denying Wells’s motion to suppress the videotape. This argument is without merit.
 

 VIII. Ineffective Assistance of Counsel
 

 ¶ 53. Wells contends that his indictment was defective because the State failed to state in which judicial district of Harrison County his previous convictions were obtained, and the State was allowed to amend his indictment twice. Because Wells’s trial counsel failed to object to these alleged deficiencies in the indict
 
 *53
 
 ment, Wells argues that his trial counsel was ineffective.
 

 ¶ 54. Issues of ineffective assistance of counsel are generally not reviewed on direct appeal.
 
 Payton v. State,
 
 41 So.3d 713, 719 (¶ 23) (Miss.Ct.App.2009). But the Court may consider the issues if the following criteria are met: “(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial court.”
 
 Id.
 
 (quoting
 
 Graves,
 
 914 So.2d at 798 (¶ 35)).
 

 ¶ 55. The record before this Court does not affirmatively show ineffective assistance of counsel of constitutional dimensions, and the parties have not stipulated that the record is adequate to allow this Court to consider the issue. Thus, we dismiss Wells’s claim of ineffective assistance of counsel without prejudice so that he may raise his claim in a properly filed motion for post-conviction relief, if he so chooses.
 

 IX. Cumulative Error
 

 ¶ 56. Wells argues that the cumulative effect of the errors of the circuit court is grounds for reversal. Under the cumulative-error doctrine, “individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial.”
 
 Thompson v. State,
 
 990 So.2d 265, 270 (¶ 12) (Miss.Ct.App.2008) (quoting
 
 Harris v. State,
 
 970 So.2d 151, 157 (¶24) (Miss.2007)). But where the Court does not find any reversible error in part, there can be no reversible error to the whole.
 
 Id.
 

 ¶ 57. Because we have not found any reversible error in Wells’s case, there can be no reversal based on the cumulative-error doctrine. This issue is without merit.
 

 ¶ 58. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO TRANSFER AND SENTENCE AS A HABITUAL OFFENDER OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PROBATION OR PAROLE IS. AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
 

 LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ„ CONCUR. IRVING AND ROBERTS, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN . OPINION.